**ELECTRICAL RESEARCH PRODUCTS.**
**Inc., v. GROSS.**

No. 8044.

Circuit Court of Appeals, Ninth Circuit.

Dec. 14, 1936.

R. E. Robertson, of Juneau, Alaska, and John H. Ray and H. H. Breland, both of New York City, for appellant.

J. A. Hellenthal and H. L. Faulkner, both of Juneau, Alaska, for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This action was brought by appellant against appellee in the District Court for Alaska to recover possession of certain theater equipment owned by appellant and detained by appellee in his theaters at Juneau and Ketchikan,[1] and to recover $2,100 as damages for its detention and $1,200 as attorneys' fees. The value of the equipment, as alleged in the complaint, is $13,200.

■ The action does not arise under any law of the United States, nor is there any showing of diverse citizenship or other ground of Federal jurisdiction. The District Court for Alaska, however, is not only a federal District Court, but is also a court of general jurisdiction in civil cases. Compiled Laws of Alaska 1933, § 1091 (48 U.S.C.A. § 101). It therefore had jurisdiction of this case.

The action was brought under sections 3493–3504 of the Compiled Laws of Alaska 1933 (Act of June 6, 1900, c. 786, title 2, §§ 123–134, 31 Stat. 351–353). Having made the affidavit and given the undertaking which the statute prescribes, appellant required the marshal to take the above-mentioned equipment from appellee and deliver it to appellant. The marshal did take the equipment from appellee, and thereafter, no exception having been taken to appellant's sureties, and no request having been made for redelivery of the equipment to appellee, the marshal delivered it to appellant, as the statute directs. Comp.Laws Alaska 1933, §§ 3494–3498.

Appellee answered, pleading various defenses and four counterclaims. There was a jury trial. On all the issues, in-

cluding those raised by the counterclaims, the jury returned a verdict for appellee, awarding him $31,068.92 on the first counterclaim, $1,725.77 on the second, $23,948.92 on the third, and $1,692.72 on the fourth, making a total of $58,436.33. The trial court entered a judgment in appellee's favor for this amount, plus $7,500 as attorneys' fees, with interest and costs. This appeal is from that judgment.

■ The judgment appealed from is a "final decision" of the District Court for Alaska in a case "wherein the value in controversy, exclusive of interest and costs, exceeds $1,000." Therefore, this court has jurisdiction. Judicial Code, § 128, as amended (28 U.S.C.A. § 225).

The complaint alleges that appellant is the owner of the above-mentioned equipment and is entitled to possession thereof, and that appellee wrongfully detains it and refuses to surrender it to appellant. The answer admits that appellant is the owner of the equipment, but denies that appellant is entitled to possession thereof; admits that appellee detained the equipment and refused to surrender it to appellant, but denies that the detention and refusal were wrongful or unlawful; and alleges that the equipment in question was installed in appellee's theaters under and pursuant to a written contract[2] between appellant and appellee dated March 28, 1929, whereby appellee was licensed to use the equipment in his theaters for a term of ten years from the date of installation, subject to the terms, conditions, and limitations of the contract, a copy of which is attached to and made a part of the answer; that the contract is still in full force and effect; that it has never been modified, rescinded, or revoked; that appellee has complied with all its terms and provisions; that he has not been and is not now in default, and that he was and is, therefore, entitled to possession of the equipment.

The answer contains four counterclaims.[3] The first and third are for damages for taking and withholding the afore-

---

[1] The complaint states what purport to be two causes of action, one of which relates to equipment in appellee's Juneau theater, the other to equipment in his Ketchikan theater. The two purported causes of action are in reality one, and are here treated as one.

[2] Appellant and appellee executed two contracts on March 28, 1929, one re-

lating to equipment in appellee's Juneau theater, the other to equipment in his Ketchikan theater. The two contracts are in effect one, and are here treated as one.

[3] The first and second counterclaims relate to equipment in appellee's Juneau theater, the third and fourth to equipment in his Ketchikan theater. The

said equipment from appellee.[4] The second and fourth are for the recovery of sums alleged to have been wrongfully obtained by appellant from appellee by means of threats.

In the second and fourth counterclaims it is alleged that on December 30, 1929, appellant threatened to remove and take from appellee's possession all equipment theretofore installed in his theaters and to deprive him of the use thereof, unless he paid appellant $1,975.60, which he had not contracted to pay and did not owe appellant; that appellee believed that appellant could and would carry out said threat; that, so believing, appellee did, because of said threat, and under duress, pay appellant $1,975.60; that thereafter appellant continued to threaten that, unless appellee paid appellant further amounts, appellant would disconnect said equipment; and that appellee, believing that appellant could and would carry out said threats, did pay appellant further amounts aggregating $1,130.50, making a total[5] of $3,106.10, for which, with interest, attorneys' fees and costs, appellee prays judgment.

Why, or on what ground or basis, if any, these threats were made is not indicated. It is not alleged that they were based on any contract, or any right or claim of right to possession of the equipment above referred to, or any claim or contention that appellee was wrongfully detaining the equipment or wrongfully withholding possession thereof from appellant; nor is there any allegation that appellant has agreed or promised to repay the money thus obtained from appellee.

■ Appellant demurred to the second and fourth counterclaims, on the ground that neither of them states facts sufficient to constitute a counterclaim. The demurrer was overruled. This ruling was excepted to and is assigned as error. There is no merit in appellee's suggestion that, because not incorporated in the bill of exceptions, this ruling is not properly before us for review. A ruling on a demurrer to a pleading is not required to be incorporated in the bill of exceptions. Board of County Commissioners v. Home Savings Bank, 236 U.S. 101, 104, 35 S.Ct. 265, 59 L.Ed. 485; Nalle v. Oyster, 230 U.S. 165, 177, 33 S.Ct. 1043, 57 L.Ed. 1439; Mitsui v. St. Paul Fire & Marine Ins. Co. (C.C.A.9) 202 F. 26, 28.

Counterclaims are provided for in chapter 75, §§ 3421–3424, of the Compiled Laws of Alaska 1933 (Act of June 6, 1900, c. 786, Title 2, §§ 63–66, 31 Stat. 342, 343). Section 3421 provides that the answer of the defendant shall contain, inter alia, a statement of any new matter constituting a defense or counterclaim. Section 3422 provides:

"The counterclaim mentioned in this chapter must be one existing in favor of the defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the following causes of action:

"First. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim.

"Second. In an action arising on contract, any other cause of action arising also in contract, and existing at the commencement of the action."

■ The causes of action stated in the second and fourth counterclaims do not arise in, on, or out of any contract, nor do they arise out of any transaction set forth in the complaint. Therefore, under section 3422, these are not valid counterclaims.

Cases cited by appellee as sustaining their validity are not in point. In Clement v. Field, 147 U.S. 467, 13 S.Ct. 358, 37 L. Ed. 244, both the action and the counterclaim arose on contract, the action being founded on a chattel mortgage, the counterclaim on a contract of sale. In Story & Isham Co. v. Story, 100 Cal. 30, 34 P. 671, and in Bannerot v. McClure, 39 Colo. 472, 90 P. 70, 12 L.R.A.(N.S.) 126, the action and the counterclaim arose out of the same transaction. The decision in Advance Thresher Co. v. Klein, 28 S.D. 177, 133 N. W. 51, L.R.A.1916C, 514, was under a statute permitting counterclaims which are merely "connected with the subject of the action." Under the Alaska statute, such counterclaims are not permitted.

first and third are in reality one. So also are the second and fourth.

[4] In Alaska such damages are recoverable in the action wherein the taking and delivery were obtained. Compiled Laws of Alaska, 1933, section 3696 (Act of June 6, 1900, c. 786, Title 2, § 253, 31 Stat. 371).

[5] This total is the aggregate of those alleged in the second and fourth counterclaims.

Appellant's demurrer should have been sustained.

Appellant's reply admits that appellant and appellee made and executed the contract of March 28, 1929, above referred to, and that the equipment in question was installed in appellee's theaters under and pursuant thereto, but denies that appellee has complied with the contract, and alleges that, by written agreement dated September 4, 1929, appellant and appellee mutually agreed to and did modify the contract, and particularly section 6 thereof, in the respects hereafter indicated.

Appellant also alleges [6] that it has fully complied with the contract, as originally executed and as modified by the agreement of September 4, 1929; that appellee has failed and refused to make certain payments required by sections 6 and 8 of the contract and therefore, under section 14 thereof, is in default; and that, because of appellee's default, appellant is entitled, under section 15 of the contract, to possession of the equipment above referred to.

Section 6 of the contract, as executed, reads as follows: "In addition to any other payments required to be made by the Exhibitor [appellee] hereunder, the Exhibitor agrees to pay Products [appellant] throughout the term [7] of the license hereby granted a service and inspection payment, payable weekly, which, for the first two weeks of said term, shall be payable on the Saturday next succeeding the 'Service Day' and thereafter throughout the balance of said term on each and every Saturday in advance. The amount of such payment shall be in accordance with Products' regular schedule of such charges as from time to time established. Under Products' present schedule, the service and inspection payment shall be $——— per week, which charge shall not be exceeded during the first two years of the period of said license and thereafter for the balance of the term of said license shall not exceed the sum of $——— per week."

Appellant introduced in evidence two letters dated September 4, 1929, written on appellant's letterhead, addressed to appellee, signed by appellant's comptroller, R. A. Anderson, and accepted and signed by appellee in the presence of a witness. The letters are identical, except that one is addressed to appellee at Juneau and refers to equipment in his Juneau theater, and the other is addressed to him at Ketchikan and refers to equipment in his Ketchikan theater. Each letter refers to the agreement of March 28, 1929, and states: "This agreement was executed with the provisions left blank relating to weekly payments, in order that the amount thereof might be later determined. It is proposed that this provision of the agreement be now made definite, and that in order to give effect thereto, the above mentioned agreement be modified by striking out paragraph [section] 6 thereof (which, as above stated, was left blank as to the amount of the charge), and inserting in lieu thereof the following: * * *"

Then follows the proposed new section 6, which is identical with the old, except as to the last sentence thereof. In the new section this sentence reads as follows: "Under Products' [appellant's] present schedule, the service and inspection payment shall be $29.75 per week, [8] which charge shall not be exceeded, provided, however, that the Exhibitor [appellee] agrees to reimburse Products for any extra expense incurred by Products because of the use of airplane or other extraordinary means of transportation incurred in connection with emergency service visits."

Each letter concludes: "Will you kindly indicate your acceptance of the above by signing and returning to us one copy of this letter." This is followed by the signature of R. A. Anderson, Comptroller, below which appears the word "Accepted," followed by appellee's signature and that of a witness. That appellee signed the letters and returned signed copies of them to appellant is admitted. The letters, with appellee's signed acceptance, constitute the modification agreement above referred to. There was no other modification of the contract.

Section 8 of the contract provides that appellee shall pay appellant "its list installation charges as from time to time established for any additional equipment

---

[6] These allegations are not in the reply, where they properly belong, but are in the complaint, having been made in anticipation of appellee's defense.

[7] The term began on "service day," which, as defined in the contract, was the date on which installation of the equipment was completed. Installation was completed in May, 1929.

[8] The total payment for the two theaters being $59.50 per week.

or spare or renewal parts furnished or supplied by Products [appellant], upon delivery thereof * * * and the transportation charges thereon."

Section 14 provides: "This agreement and the license hereby granted shall, at the option of Products [appellant], terminate and come to an end upon the happening of any of the following events, hereby designated to be events of default, to wit: (a) * * * (b) Upon the failure or refusal of the Exhibitor [appellee] for any reason to pay any of the items or sums herein agreed to be paid by it [appellee] * * * within five days after such item or sum is or may become due, and as to this provision time shall be of the essence. * * * In the event of a default under any of the provisions of this section at any time during the term of this license, the license hereby granted and all obligations imposed upon Products by virtue of this agreement shall, at the option of Products and whether or not it terminates this license or removes the equipment as hereinafter provided; be suspended during the continuance of such default."

Section 15 provides: "If this license shall be terminated by default, or if the Exhibitor [appellee] permits any of the events of default, hereinbefore enumerated, to occur, whether or not Products [appellant] shall exercise the option to terminate this agreement, Products shall thereupon have the right without notice to take immediate possession of said equipment, or any part thereof, and for that purpose * * * may enter * * * the theater or other premises of the Exhibitor * * * in which the equipment or any part thereof may be placed, and may take and seize the same to its [appellant's] own proper use forever, free from any right of the Exhibitor under this agreement. * * * The Exhibitor expressly covenants that in any such event no claim will be made for damage on account of such removal or otherwise. * * *"

Appellee, testifying as a witness for himself, admitted that he had refused to make, and had not made, any service and inspection payment for any of the weeks from May 24, 1930, to March 7, 1931, for which period such payments, if made in accordance with section 6 of the contract, as modified, would have amounted to $2,-439.50. In justification of his refusal, appellee contended (1) that the contract, as originally executed, did not obligate or require him to make any such payment; and (2) that the modification of September 4, 1929, was void.

The trial court upheld the first of these contentions and accordingly instructed the jury that the contract, as originally executed, did not require appellee to make any service and inspection payment. This was error. By the first sentence of section 6, appellee expressly agreed to pay appellant a service and inspection payment on Saturday of each week throughout the term of the license. The next sentence provided that the amount of such payment should be in accordance with appellant's regular schedule of such charges, as from time to time established. Appellant was engaged in the business of licensing theater equipment to exhibitors and theater owners throughout the Western States and the Territories of Alaska and Hawaii, and had a regular established schedule of service and inspection charges. By reference to that schedule, the amount payable under section 6 could readily have been ascertained. This section, therefore, was not void for uncertainty, but was valid and enforceable. Williston on Contracts, § 47; Page on Contracts (2d Ed.) § 101; 6 R.C.L. 645; 13 C.J. 268–271. That is certain which can be made certain.

This principle was recognized and applied in Rhyne v. Rhyne, 151 N.C. 400, 66 S.E. 348, cited in appellee's brief. Other cases cited by appellee are not in point. In Church v. Noble, 24 Ill. 291, 292, and in Lore v. Smith, 161 Miss. 579, 133 So. 214, the covenant sought to be enforced was so incomplete as to be meaningless, and the contract provided no means whereby the deficiency could be supplied. That is not true of the contract here considered. Failure to fill up the blanks in the last sentence of section 6 rendered that sentence inoperative, but the preceding portions of the section were not thereby invalidated or affected.

Appellee contended that the modification agreement of September 4, 1929, was void because appellant's comptroller, R. E. Anderson, who executed the agreement on behalf of appellant, was not authorized to do so. This contention was based on a provision of the contract to the effect that no agent of appellant was authorized to alter or modify the contract unless such alteration or modification was approved in

writing by appellant's president or vice president or by a representative designated in writing by one of those officers.

The trial court instructed the jury that there was no evidence that the modification agreement of September 4, 1929, had been so approved, and that, in the absence of such approval, the agreement was void, unless it had been ratified by "the parties," meaning, of course, appellant and appellee. This was error. Appellee signed the agreement for himself. He did not need to ratify his own act. As to ratification by appellant, there was no question for submission to the jury. Ratification was shown by uncontradicted evidence. The fact that appellant had pleaded and was relying on the agreement was of itself conclusive proof of ratification. Mechem on Agency (2d Ed.) § 446; 21 R.C.L. 928; 2 C.J. 513–515. Whether or not there was evidence of previous authorization, it is unnecessary to decide.

The court instructed the jury that, if they found for appellee, they might award him as damages for the wrongful taking and removal of the equipment from his theaters (1) the rental value of such equipment for the period during which it was withheld from him; (2) the profits, if any, lost by him in consequence of such removal; and (3) the cost of purchasing and installing new equipment to replace that which had been removed. This was error. The evidence does not show a wrongful taking or removal of the equipment. On the contrary, it shows that such taking and removal were lawful and proper. There was, therefore, no basis for any award of damages to appellee and no occasion for instructing the jury as to the measure of such damages.

But, even assuming that there should have been an instruction on this subject, the instruction given was obviously wrong. The equipment taken from appellee in this action was owned by appellant. Appellee had merely a license to use it for a term of years, subject to certain conditions, including the payment of a weekly service and inspection charge. Assuming it to have been wrongfully taken, appellee could recover only the value of his license. Sedgwick on Damages (9th Ed.) § 78. How that value should be determined we need not consider, since, as previously stated, the evidence shows there was no wrongful taking.

The erroneous instructions hereinabove considered were duly excepted to and are assigned as error. There is no merit in appellee's contention that the grounds of exception were not properly or sufficiently stated. The court's charge was in writing and was read to the jury. Comp.Laws Alaska 1933, § 3591. Appellant indicated by page, line, and paragraph, and thus stated distinctly, the several matters of law in the charge to which it excepted. This was a sufficient compliance with our rule 10.

It was shown by uncontradicted evidence that appellee owed appellant $91.-01 for additional equipment furnished to appellee under and pursuant to section 8 of the contract, which amount had become due and payable more than one week prior to the commencement of this action, and, at that time and at the time of trial, was wholly unpaid. Appellant requested the court to instruct the jury that the evidence so showed. The court refused this request. The refusal was excepted to and is assigned as error. Appellee complains that the ground of this exception was not stated. It did not need to be. The only possible ground of an exception of this kind is that the refusal of the requested instruction was erroneous and prejudicial. That, whether stated or not, is understood to be the ground of every such exception. The exception in this case was sufficient, and the assignment predicated thereon is well taken. The requested instruction should have been given.

Judgment reversed, and case remanded, with directions to sustain the demurrer to the second and fourth counterclaims and to grant appellant a new trial.