[Civ. No. 5916. Third Appellate District.—January 19, 1938.]

A. PALADINI, INC. (a Corporation), Respondent, v. WILLIAM DURCHMAN', Appellant.

H. C. Nelson for Appellant.

· Daniel W. Hone for Respondent.

PLUMMER, J.—This cause is before us upon appeal from a judgment awarding plaintiff the amount claimed to be due from the defendant by reason of advances made relative to the equipment of a certain fishing boat, and directing foreclosure and sale of the boat in question to repay the plaintiff for its advancements.

This cause was once tried on the theory that the plaintiff was the owner of the boat in question by reason of the execution and delivery by the defendant to the plaintiff of a bill of sale and an oral promise immediately thereafter that the plaintiff might take possession of said boat if the defendant defaulted in any particular relative to making the payment of the sums advanced by the plaintiff. This payment was to be made by the delivery of fish as caught by the defendant.

Upon appeal to the Supreme Court it was held that the bill of sale was a mortgage and did not transfer title, and

under the bill of sale the claim of possession to the boat as transferring title could not be sustained. (*A. Paladini* v. *Durchman*, 216 Cal. 212 [13 Pac. (2d) 731].) The cause was remanded by the Supreme Court for the purpose of permitting amendments of pleadings and the introduction of additional evidence, if any, in the trial of a cause upon the theory that the bill of sale was a mortgage.

The record shows that in 1926, the defendant had purchased a boat, but which boat was not supplied with any engine or the equipment necessary for its use in fishing in the waters of the Pacific Ocean adjacent to the county of Humboldt. Thereupon an agreement was entered into between the plaintiff and the defendant that the plaintiff would have installed in said boat a gasoline engine and also supply the boat with the necessary equipment, then furnish the necessary fishing tackle for use by the defendant to enable him to proceed with his business of fishing in the waters just referred to.

To secure the repayment of the sums advanced by the plaintiff to the defendant, a bill of sale to the boat was executed by the defendant and delivered to the plaintiff. At the same time it was agreed that the defendant should make payment of the sums advanced by the plaintiff, by delivering all of the fish caught by him, to the plaintiff; that the plaintiff would credit the defendant with the value of a certain portion of the catch, and pay to the defendant the remaining value thereof. It was further agreed that the defendant would deliver all of the fish caught by him, to the plaintiff, until full repayment was made, and that if the defendant failed to deliver all of the fish caught by him, to the plaintiff, then and in that case the plaintiff might take possession of the boat.

Upon appeal it was held that the bill of sale did not transfer title, and that the agreement relative to taking possession of the boat by the plaintiff was void, in that it cut off the right of redemption, and that as we have said, the bill of sale was simply a mortgage.

Upon the coming down of the case, amended pleadings were filed by both the plaintiff and the defendant, and upon a retrial the testimony introduced showed the facts which we have stated, and also the further testimony that in 1928, two years after the original agreement, when the defendant had

defaulted in his promises, the plaintiff took possession of the boat, held it for a short time, and then the defendant and the plaintiff had a subsequent agreement in which it was agreed that the plaintiff should advance further sums, and the defendant then and at that time also further agreed that if he, the defendant, defaulted in any particular in the delivery of fish to the plaintiff and in making payment of the sums due the plaintiff, the plaintiff might take possession of the boat and tie it up, or put someone else in possession of the boat and use the boat in fishing.

The record shows that the defendant failed to comply with his agreement, and up to the time of the trial of this second action, had not repaid the plaintiff or made any demand for the repossession of the boat, which was again taken possession of by the plaintiff some time during the year 1929.

The testimony as to the second agreement, which we think was not incidental to the execution of the mortgage (denominated a "bill of sale"), is as follows:

"Q. (Mr. Hone). What if anything was said either by you or Mr. Durchman as to what was to happen if he failed to use the boat exclusively for that purpose?

"Mr. Beamer: Just a minute; we object to this line of testimony because the matter has already been tried and decided by the Supreme Court.

"Mr. Hone: There isn't any evidence in the transcript on the matter.

"The Court: Well, the objection is overruled this time.

"A. (Mr. Mercich): Mr. Durchman told me that if he didn't live up to his promise and deliver all of the fish to us, that we could take that boat away from him and tie it up until such time as that boat worked for Paladini; if we wasn't satisfied with him we could put another man on the boat and fish the boat.

"Q. (Mr. Hone): What was the second time that you had any conversation with Mr. Durchman relative to this matter? A. (Mr. Mercich): The second time was over the telephone from Fort Bragg. Q. Just prior to that conversation wasn't there a conversation at the office of someone here in Eureka? A. Oh, we had taken Mr. Durchman up to Mr. McGrath's office in regard to getting security for the use of our engine, and also that he would live up to his contract, that he would stick by his word and deliver fish directly to Paladini. Q. And what was said at that time?

A. That he would deliver every pound of fish to us, right in Mr. McGrath's office. Q. Who said that? A. Mr. Durchman. Q. What was the third conversation that you had with Mr. Durchman? A. The third conversation with Mr. Durchman was over the telephone from Fort Bragg; he was delivering fish to another firm in Fort Bragg. Mr. Beamer: We object to that on the ground it is hearsay. (Mr. Hone): Do you know that of your own knowledge? A. (Mr. Mercich): Yes, sir; that he was delivering fish to another firm, and I instructed our manager in Fort Bragg to get a hold of the boat and tie it up; that he was not living up to his contract, that he was defrauding us out of our fish, and to tie up the boat, and Mr. Durchman called me up on the telephone and told me, he says: 'I have got a few dollars coming ·from this other concern, and when I collect it I will turn it over to the Company for part payment, and if I ever do that again,' he says, 'you can take the boat away from me entirely.' Q. If he ever does what again? A. If he ever delivered any fish to any other company besides ours until his bill was paid. Q. When was that conversation? A. That was in 1928.''

The testimony at the first trial related simply to the theory upon which the cause was heard, to wit: That the bill of sale actually transferred title. Upon the second action the testimony was introduced and the trial was had upon the theory that the bill of sale constituted a mortgage. For this reason there is a different construction and application to be given to section 2927 of the Civil Code, which reads: ''A mortgage does not entitle the mortgagee to the possession of the property unless authorized by the express terms of the mortgage, but after the execution of the mortgage, the mortgagor may agree to such change of possession without a new consideration.''

As we read the transcript there was a new consideration for the subsequent agreement in 1928, authorizing the plaintiff to take possession of the boat in the event of a failure of the defendant to comply with the terms of the agreement relative to making payment of the indebtedness owing by him to the plaintiff, in that the plaintiff did agree to, and did furnish the defendant with additional fishing equipment and supplies necessary for him to continue his business as a fisherman. At the time of the filing of the amended complaint and the beginning of this action, on the theory that the bill of

sale was a mortgage, the defendant owed to the plaintiff the sum of $2,292.57, plus interest. ▮ Upon this appeal it is urged by the defendant that the decision of the Supreme Court found, as we have stated, in 216 Cal. 212, *supra,* is binding, and that the trial court was in error in awarding judgment of foreclosure. This overlooks the fact that the case was referred by the Supreme Court to the trial court for trial on the theory that the bill of sale was a mortgage, and for the introduction of such additional testimony, if any existed, to establish the right of the plaintiff to have judgment of foreclosure against the boat, and necessarily, the establishment of such rights as the plaintiff might have or be entitled to.

The testimony which we have set out in this opinion, so far as we are able to ascertain, is additional to the testimony which was introduced upon the original trial. On the part of the appellant it is urged that it is simply supplementary. If this be admitted, it would not change the ruling which should be had under section 2927, *supra.* There is nothing in the code section limiting the right of the parties, subsequently to the execution of the mortgage, to enter into an agreement relative to the taking of possession of personal property by the mortgagee, in the event that the mortgagor fails to comply with his agreement. Under the section cited such an agreement need not be made at the time of the execution of the mortgage, but may be entered into at any time thereafter, and a failure on the part of the mortgagor to comply with his agreement would justify the mortgagee in taking possession of the personal property for the purpose of securing the indebtedness or the amount of money promised by the defendant to be repaid to the plaintiff.

The appellants in this case simply make the statement that the testimony given at the first trial, and as introduced upon the second trial, is identical, without calling our attention to the testimony or setting out the same in support of the simple statement. As we have said, there is a distinct difference between the theory upon which the first trial was had and the theory of the second. The first trial was upon the theory that the bill of sale transferred the title. The second trial was had upon the theory that the bill of sale was a mortgage; that the defendant had breached his obligation to pay, had failed to deliver fish as agreed upon; that in 1928, at the time when it appears that there was a question being raised as to the defendant breaching his agreement and de-

livering fish to other than the plaintiff, the defendant agreed, as shown by the testimony which we have set forth, that upon his subsequent failure to deliver fish, as agreed upon, and making payment to the plaintiff, the plaintiff might take possession of the boat. It appears that there was some thought of the defendant concealing the boat, which authorized the plaintiff to take possession thereof, prevent its being removed from the jurisdiction of the court, and likewise deprive the plaintiff of its security.

Where there is a substantial difference between the facts shown upon the second trial, from the evidence offered on the first trial, the rule insisted upon by the appellants does not apply. (*Dewees* v. *Kuntz,* 130 Cal. App. 620 [20 Pac. (2d) 733].) This rule is supported in the following cases: *Mitchell* v. *Davis,* 23 Cal. 381; *Nieto* v. *Carpenter,* 21 Cal. 455; *Cowell* v. *Snyder,* 171 Cal. 291 [165 Pac. 920]. Other cases might be cited, but we deem the foregoing sufficient.

Under the theory that the bill of sale did not transfer title it was held upon the original trial that the evidence was insufficient to show that plaintiff was entitled to possession. This is not holding that under the theory and the law declared by the Supreme Court that the bill of sale was a mortgage, there could be no valid agreement between the parties that possession might be taken of the boat by the plaintiff on account of a breach of his agreement by the defendant to make payment and deliver fish exclusively to the plaintiff when the agreement was made subsequent to the execution of the mortgage, and at a time when the question arose as to the further supply of material and equipment in order to enable the defendant to continue his business as a fisherman.

In further support of what we have said as to the second agreement, it appears from the transcript, in the testimony given by one Mercich, who was acting as an agent for the plaintiff at the time of the subsequent agreement, to wit: "Mr. Durchman told me that if he did not live up to his terms and deliver all the fish to us, that we could take that boat away from him and tie it up until such time as the boat worked for Paladini. If we was not satisfied with him, we could put another man on the boat and fish the boat." The testimony was repeated in a different form, but the substance of it we have just stated.

The contention of the appellant that when the plaintiff placed the boat in its fishing service, or rented it to others, it was guilty of conversion, is amply answered by the testimony which we have set forth, and justified the trial court in holding that the plaintiff rightly took possession of the boat to secure repayment of the funds advanced by it. The objection that the plaintiff did not sell the boat within a reasonable time, does not appear to have been raised upon the trial of the action. There is nothing in the pleadings which raises that question, nor does it appear from the record that the defendant ever made any demand for the return of the boat, or at any time ever offered or tendered to the plaintiff repayment of the moneys advanced to him by the plaintiff.

We do not find any merit in the appellant's contention that by the taking of possession of the boat under the terms of the bill of sale, construed as a mortgage, and the subsequent agreement relative to such possession, that the plaintiff waived its lien or in any manner jeopardized its right to the judgment of foreclosure entered in this action.

In the case of *Tracy* v. *Stock Assurance Bureau,* 132 Cal. App. 573 [23 Pac. (2d) 41], an almost identical situation was presented. There, certain shares of stock had been delivered as security for the repayment of money advanced. No repayment was ever made; no demand was made for the return of the stock. It was held that the lien was not waived.

To the same effect is the case of *Story & Isham Commercial Co.* v. *Story,* 100 Cal. 30 [34 Pac. 671] ; *Wixom* v. *Davis,* 57 Cal. App. 620 [207 Pac 694]. In that case reference is made to section 2927, *supra,* and it is held that the mortgagee was entitled to possession. See, also, the case of *Summerville* v. *Stockton Mill Co.,* 142 Cal. 529 [76 Pac. 243]. In that case it was held that in order to constitute conversion there must be some act done contrary to a repudiation of the lien held by the plaintiff. Here, there is no showing of any repudiation of the lien, but there is a showing that the possession was taken in furtherance of the lien, and for the purpose of securing repayment of the moneys advanced by the plaintiff to the defendant.

We do not find any testimony in the record justifying the claim of damages on the part of the defendant, but we do find that the allegations thereof in the defendant's pleadings are so general as not to need specific consideration herein.

There are other points made by the appellant for reversal, but what we have said we think necessitates an affirmance of the judgment of the trial court. And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.