## Reo Motors, Inc., v. Wolf et al.

*Compton & Handler*, for plaintiff.

*Caldwell Fox & Stoner*, for defendants.

SMITH, J., January 3, 1950.—This case comes before the court on preliminary objections filed by plaintiff to a counterclaim pleaded by one of the defendants in the answer. The action is in trespass. The counterclaim is in assumpsit. The preliminary objections question first, the right to file the counterclaim and second, the sufficiency thereof. The pleadings material to the questions thus raised are as follows:

### The Complaint

The complaint avers that on certain dates in July and August 1948 plaintiff and the three defendants, trading as Mid State Motors, and individually through their duly authorized agent, naming him, entered into seven written agreements (hereinafter called "display agreements") each for a motor vehicle therein described; that the agent in certain instances was defendant Ben W. Wolf, and in other instances defendant Horace S. Wolf; that pursuant to these display agreements, plaintiff delivered to defendants and defendants accepted on consignment seven Reo motor vehicles of the total value of $28,593.92 for the purpose of display in defendants' show room for a period of 90 days from the dates of the respective agreements, title to the said motor vehicles to be retained by plaintiff and the motor vehicles to be returned to plaintiff by defendants on the expiration of the 90-day period. Copies of five of the aforesaid seven display agreements are attached as exhibits to the complaint. With respect to the five motor vehicles, the subject of these five agreements, the complaint avers that defendants at the expiration of the respective 90-day periods did not return any of them to plaintiff but, on the contrary, acting through the aforesaid agents and representing that the motor vehicles were subject to no liens, encumbrances, leases, contracts of conditional sale, or other legal claims, thereafter sold and delivered the same to named third parties and converted the entire proceeds thereof to their own use. The originals of two of the aforesaid seven display agreements, copies of which are not attached as exhibits to the complaint, plaintiff avers were delivered by it to defendants, together with bills of sale for the two motor vehicles referred to therein, upon receipt of defendants' check in payment thereof and on which check payment was thereafter stopped by defendants. Further, with respect to the

two motor vehicles, the subject of these two display agreements, plaintiff avers that prior to the issuance by it of bills of sale therefor, defendants had sold the same to a named third party who obtained certificates of title thereto; that defendants at no time have paid plaintiff the value thereof; and that plaintiff had no knowledge that defendants had sold or converted said motor vehicles to their own use until after titles thereto had been transferred to the purchaser. Wherefore, plaintiff claims of defendants the sum of $28,593.92, with interest.

## The Counterclaim

To this complaint defendants filed an answer, including a counterclaim by Carrie Thoman Wolf, one of the defendants. The answer avers that defendant Carrie Thoman Wolf was the sole owner of Mid State Motors and that none of the other defendants ever had any interest in the business other than as employes or were ever authorized to do the acts complained of by plaintiff. The counterclaim avers that Carrie Thoman Wolf, individually, trading as Mid State Motors, during the time of the several transactions pleaded in the complaint and in the counterclaim, held the exclusive rights to establish agencies and sell new Reo products at wholesale or retail within certain specified counties in the State of Pennsylvania, under a distributor's contract with plaintiff, effective October 3, 1947, and thereafter cancelled by plaintiff as of November 1, 1948. A copy of this contract is attached to and made a part of the counterclaim. The counterclaim further avers that the seven display agreements pleaded by plaintiff were all made pursuant to the distributor's contract and by reason of the relationship between the parties thereunder and that the display agreements constituted a legal fiction as the vehicles described therein were actually sent to defendant for the purpose of resale and not for display. The counterclaim

also avers that defendant Carrie Thoman Wolf during the time the distributor's contract was in effect was at all times willing and able to perform all of her obligations thereunder and that, in violation of the provisions of the distributor's contract, plaintiff knowingly and intentionally permitted, aided and abetted other Reo dealers in selling Reo commercial vehicles in the exclusive territory of defendant. The counterclaim then specifically pleads 18 such sales. The details with respect thereto, including the commission to which defendant, Carrie Thoman Wolf, claims she was entitled, and none of which she received, are set forth, totalling the sum of $27,126, for the recovery of which sum she filed her counterclaim.

### The Preliminary Objections

Plaintiff's preliminary objections to the counterclaim are as follows:

"1. The counterclaim does not arise from the same transaction or occurrences or series of transactions or occurrences from which plaintiff's cause of action arose and, therefore, may not be filed in an action of trespass.

"2. The counterclaim as filed by defendant does not state a good cause of action against plaintiff in that (a) there is no showing of plaintiff's participation in the alleged violations of contract; (b) there is no showing of when or under what circumstances plaintiff permitted, aided and abetted other Reo dealers in selling Reo commercial vehicles in the alleged exclusive territory of defendant; (c) there is no averment showing by what agent or in what manner plaintiff acted to do the things alleged in said contract, and (d) there is no showing of authority of any agent to act in the premises."

These preliminary objections "state specifically the grounds relied upon" as provided by Pa. R. C. P.

1028(a). However, therein "the relief to which the party deems himself entitled" is not specified as required by Pa. R. C. P. 1021. In our discussion, however, we shall consider plaintiff's first preliminary objection as a motion to strike off the counterclaim because of lack of conformity to law or rule of court and its second preliminary objection as a motion for a more specific counterclaim.

## Discussion

Plaintiff's first preliminary objection, which we are considering as a motion to strike off the counterclaim, is predicated on Pa. R. C. P. 1046, which provides, with respect to actions of trespass, as follows:

"A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose."

This rule permits all counterclaims which arise from the same transactions or occurrences from which plaintiff's cause of action arises regardless of whether they sound in trespass or assumpsit: Goodrich-Amram, page 141; Jones v. Auto Rental Co., 63 D. & C. 207. Its manifest purpose is to permit the parties in one action to settle all matters in controversy relating to the transactions which are the foundation of the suit. Thus in the Jones case, supra, a counterclaim in assumpsit for the rental of and repairs to a motor vehicle, as provided under a contract between the lessor and lessee of the vehicle, was held to be properly filed in an action for malicious prosecution brought by the lessee against the lessor after an alderman had dismissed a criminal charge made by the lessor against the lessee of renting the motor vehicle in question with intent to defraud. And this because as the court aptly said, ". . . the counterclaim clearly arises from the same transaction

upon which plaintiff's action is based, viz., the renting of the truck".[1]

In the case at bar, however, the counterclaim is not predicated on the display agreements pleaded by plaintiff. On the contrary, defendant Carrie Thoman Wolf therein does not limit herself to the facts set forth in the complaint but goes further and pleads in subtance that the basis or foundation of the transactions between her and plaintiff was the distributor's contract and that the display agreements, which she avers were legal fictions as the vehicles therein described were actually sent to her for resale, were predicated solely on the distributor's contract and as such represented only a part of the transactions between the parties. Wherefore, she contends that her counterclaim is permitted under the provisions of the procedural rule in question.

How inclusive is the term "same transaction"? Is the term limited to the facts pleaded in the instant complaint, to wit, the display agreements? Or are the display agreements so inextricably related to the distributor's contract as to constitute a part of the "same transaction" within the counterclaim rule in an action of trespass? The only Pennsylvania cases cited by counsel construing Pa. R. C. P. 1046 are the Jones case, supra, and Watkins Produce Co., Inc., v. Kanitsky et al., 68 D. & C. 198. In the case last cited a counterclaim was stricken off because no connection appeared between it and the claim on which suit was brought. Neither of these cases, in our opinion, is here con-

---

[1] Pa. R. C. P. 1046 as thus construed is in accord with the interpretation placed upon like provisions found in rules or codes of other jurisdictions. See King v. Coe Commission Co., 93 Minn. 52, 100 N. W. 667; Story & Isham Commercial Co. v. Story, 100 Cal. 30, 34 Pac. 671; Mulcahy v. Duggan, 214 Pac. 1106; Lesnik v. Public Industrials Corp. (C. C. A. 2nd Circuit), 144 F. (2d) 968; Kent et al. v. Clark, 20 Cal. (2d) 779, 128 P. (2d) 868; also annotation in 68 A. L. R. 451.

trolling. However, the application of procedural rules or code provisions similar to the rule here in question has frequently been considered by the courts of other jurisdictions. Thus in Story & Isham Commercial Co. v. Story et al., 100 Cal. 30, 34 Pac. 671, defendant agreed to pay the debts of plaintiff corporation and, as security, plaintiff conveyed to her all its notes and accounts, merchandise on hand, and all its property with certain exceptions. It was agreed that plaintiff should endeavor to sell the merchandise, and apply the receipts to the payment of defendant, and that the property conveyed to defendant should not be sold at less than its cost to plaintiff, without the consent of plaintiff's directors. Subsequently, defendant, without plaintiff's knowledge, sold a portion of the goods, and plaintiff sued for conversion. Defendant, for answer, set up the whole agreement; alleged performance on her part, and that there was due her, above the value of the property sold, a large sum; and prayed an accounting. Here it was held, that such answer was a proper counterclaim, within Code Civil Proc., sec. 438, providing that "a cause of action arising out of the same transaction" may be so set up, and the fact that plaintiff alleged no facts to show that the counterclaim arose out of the same transaction did not prevent defendant from setting out the entire transaction, and thus showing the relation of her claim thereto. In so holding the court among other things said, page 36:

"The plaintiff is not at liberty to select an isolated act or fact which is only one of a series of acts or steps in the entire transaction, and insist upon a judgment on this fact alone, if the fact is so connected with others that it forms only a portion of the transaction. The transaction which was the foundation of the cause of action set forth in the complaint herein is not limited to the facts therein set forth, but includes the entire series of acts and mutual conduct of the parties in the

business or proceeding between them which formed the basis of their written agreement."

Again on this question in King v. Coe Commission Co., 93 Minn. 52, 100 N. W. 667, it was said, page 54:

"The transaction is not necessarily confined by the facts stated in the complaint, but the defendant may set up new facts, and show the entire transaction, and counterclaim upon that state of facts as the transaction upon which plaintiff's claim is founded: 25 Am. & Eng. Enc. (2d Ed.) 589. The transaction refers not only to an occurrence or act, but to commercial or business transactions or dealing, something in the nature of a contract or a series of contracts with respect to the same business or subject-matter." [2]

Further, as stated in 47 Am. Jur. 742, 743, §44:

". . . the term 'transaction' is not legal and technical, but common and colloquial, and is therefore to be construed according to the context and approved usage, and that as so construed, it is broader than either 'contract' or 'tort', although it may include either or both. It has been defined as that combination of acts and events, circumstances and defaults, which viewed in one aspect results in the plaintiff's right of action, and viewed in another aspect results in the defendant's right of action, and, according to some authorities, it applies to any dealings of the parties resulting in wrong, without regard to whether the wrong is done by violence, neglect, or breach of contract. The term 'same transaction' does not necessarily mean occurring at the same time. The 'transaction' comprehended within the meaning of the codes is not limited to the facts set forth in the complaint, but includes the entire

---

[2] Other cases citing with approval or applying the principle of the Story and King cases are Mulcahy v. Duggan, 67 Mont. 9, 214 Pac. 1106; Lesnik v. Public Industrials Corporation (C. C. A. 2), 144 F. (2d) 968; Pioneer Engineering Works, Inc., v. McConnell, 113 Mont. 392, 130 P. (2d) 685; Parmelee v. Chicago Eye Shield Co. (C. C. A. 8), 157 F. (2d) 582.

series of acts and mutual conduct of the parties in the business or proceeding between them which formed the basis of the agreement."

In the case at bar at this stage of the proceedings we must take as a fact the averments of the counterclaim to the effect that the display agreements were made pursuant to the distributor's contract and by reason of the relationship between the parties thereunder. The distributor's contract therefore, under the authorities hereinbefore cited, forms the basis or foundation of the cause of action set forth in the complaint. Accordingly, in our opinion, the counterclaim, predicated as it is on a breach by plaintiff of the distributor's contract, is permitted under Pa. R. C. P. 1046, and, therefore, will not be stricken off.[3]

At this time we are not passing on the merits of plaintiff's second preliminary objection which we are treating as a motion for a more specific counterclaim. And this because counsel for the defendant, Carrie Thoman Wolf, have advised us that she is ready and willing to amend her counterclaim to meet said objection and that we are to enter an order to this effect.

### Order

And now, January 3, 1950, plaintiff's first preliminary objection is overruled. Plaintiff's second preliminary objection is sustained for the reason herein-

---

[3] In so holding we are not here specifically passing on plaintiff's contention that, since the execution of the seven display agreements is not denied and there is no pleading of fraud, accident or mistake, defendant Carrie Thoman Wolf is precluded by the parol evidence rule from showing that the motor vehicles in question were actually sent to her for resale and not for display. However, it will be noted that in the complaint plaintiff itself pleads that in two instances, upon receipt of a check for the purchase price, it returned the display agreements together with bills of sale for the motor vehicles covered thereby to defendants. It may well be that such action on plaintiff's part constituted an admission that the display agreements did not set forth the entire understanding between the parties. As to this see Ward et al. v. Zeigler, 285 Pa. 557.

before set forth, with leave to the defendant, Carrie Thoman Wolf, to file a more specific counterclaim to plaintiff's complaint within twenty days.