# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3992

_____

| | | |
|---|---|---|
| Construction Management and Inspection, Inc., | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas |
| Caprock Communications Corp./ | * | |
| Caprock Telecommunications Corp., | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

Submitted: June 12, 2002

Filed:  August 30, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Construction Management and Inspection, Inc. (CMI) sued Caprock for tortious interference with a business expectancy and breach of contract under Arkansas law.  The district court[1] granted Caprock's motion for summary judgment

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

on the tortious interference claim. Following a bench trial on the breach of contract claim, the district court entered judgment in favor of CMI and awarded CMI approximately $140,000 in damages. CMI appeals the adverse grant of summary judgment on its claim of tortious interference with a business expectancy. We review the district court's grant of summary judgment de novo. See Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 586 (8th Cir. 2002). The district court decision is affirmed.

Caprock is a local exchange and long distance telecommunications company. Caprock's facilities include buried fiber optic cable installed by independent contractors. Caprock also contracts with separate inspection companies that ensure the contractor properly installs the fiber optic cables. One such company, CMI, provided inspection services to Caprock pursuant to a one year contract entered into on March 9, 1999. The contract expired on March 9, 2000, but the parties continued their relationship on an at-will basis under the same terms and conditions as set forth in the original contract.

On May 8, 2000, Caprock sought bids from independent contractors, including CMI, for the services then being provided by CMI. Although CMI submitted a bid, a Caprock interoffice email, dated May 10, 2000, indicated that CMI's bid would not be considered. On May 12, 2000, Caprock accepted bids from five other companies to perform the inspection services. On June 5, 2000, Caprock informed CMI inspectors that Caprock had terminated its contract with CMI. Caprock advised CMI inspectors that they could seek employment with the companies awarded contracts if they wanted to continue working on Caprock projects. CMI alleges that 150 of its

employees terminated their employment with CMI and went to work for the companies awarded the Caprock contracts.

CMI directs its claim of tortious interference with a business expectancy at Caprock's relationship with the CMI inspectors. In essence, CMI alleges that Caprock formulated and executed a plan to disrupt CMI's business by ending its relationship with CMI and inducing CMI's employees to quit and work for CMI's competitors. To prove the claim of tortious interference with a business expectancy, CMI must establish that: (1) CMI had a valid business expectancy; (2) Caprock had knowledge of the business expectancy; (3) intentional and improper interference by Caprock induced or caused a disruption or termination of the business expectancy; and (4) the disruption or termination was the proximate cause of CMI's damages. See McNeill v. Sec. Benefit Life Ins. Co., 28 F.3d 891, 893-94 (8th Cir. 1994) (applying Arkansas law and citing Mid-South Beverages, Inc. v. Forrest City Grocery Co., 778 S.W.2d 218, 219 (Ark. 1989)); Mason v. Wal-Mart Stores, Inc., 969 S.W.2d 160, 163-65 (Ark. 1998) (adopting the Restatement (Second) of Torts § 766 elements of tortious interference with a business expectancy).

The district court concluded that CMI failed to demonstrate the existence of a genuine issue of fact on the third element, that is, that CMI could not show Caprock engaged in intentional and improper interference in a business expectancy. Arkansas has adopted the Restatement (Second) of Torts § 767, which provides a template for examining CMI's claim of tortious interference. See Mason, 969 S.W.2d at 165 ("Our review of our cases leads us to the position that, as Restatement § 766, our law requires that the conduct of the defendant be at least 'improper,' and we look to

factors such as those stated in § 767 to determine whether the defendant's conduct fits that description."). Therefore, under Arkansas law, the determination of whether Caprock's conduct rises to the level of intentional and improper interference with a contract or a prospective contractual relation of another involves an analysis of the following factors: (1) the nature of Caprock's conduct; (2) Caprock's motive; (3) the interests of CMI with which Caprock's conduct interferes; (4) the interests sought to be advanced by Caprock; (5) the social interests in protecting the freedom of action of Caprock and the contractual interests of CMI; (6) the proximity or remoteness of Caprock's conduct to the interference; and (7) the relations between CMI and Caprock. Id. at 164; Restatement (Second) of Torts § 767 (1977). An evaluation of these factors supports the district court's ruling.

At the time Caprock let the bids for the inspection services, it maintained an at-will, customer-provider relationship with CMI. The parties no longer operated under a contract and the solicitation of bids evidenced Caprock's intention to conduct business with companies other than CMI. Likewise, CMI had an at-will employer-employee relationship with its inspectors. After openly seeking bids for inspection services on its fiber optic projects, Caprock accepted the bids of five separate companies. After accepting the bids of the five companies, Caprock advised CMI inspectors of its decision. Caprock also informed the inspectors they could choose to remain with CMI and not be involved in Caprock projects, or, they could continue to work on Caprock projects by seeking employment with one of the companies awarded a Caprock contract.

CMI makes much of the fact that Caprock solicited a bid from CMI while at the same time secretly indicating by interoffice memos that it would not award a contract to CMI. We agree with the district court that, in terminating its relationship with CMI, Caprock could have been more candid with CMI as a matter of professional courtesy. However, that lack of candor, alone, is not sufficient to show an intentional and improper interference with a prospective business relationship. Because Caprock and CMI were working on an at-will, customer-provider basis, Caprock had a legitimate business interest in not alerting CMI that it would not be considered for future employment and running the risk that CMI would walk off the job prior to Caprock entering into a contract with new inspection firms.

Caprock's statement to the CMI inspectors that new firms had been awarded the inspection contracts was likewise not improper. Caprock merely informed the CMI employees of the status of Caprock's relationship with CMI. Employees were accurately advised that if they wanted to continue to work on the Caprock projects, they would have to seek employment with the new inspection firms. There is nothing to indicate that the employees were induced to leave employment with CMI, other than the fact that other firms would be doing the Caprock inspection work. The fact that the inspectors terminated their employment relationship with CMI is not in itself evidence of intentional or improper interference by Caprock. As the record makes clear, it was common for CMI inspectors to leave CMI to work for several different companies and to return to CMI when more work was available. CMI presented no evidence that it would have had any work available for the 150 inspectors at the time they chose to leave CMI employment.

The evidence presented to and relied upon by the district court supports the conclusion that CMI failed to prove an essential element of its claim. We agree with the district court that the departure of the CMI inspectors was free of intentional and improper interference by Caprock. Accordingly, we affirm the district court's decision to grant summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.