**James McNEILL and Dennis McNeill, doing business as McNeill Agency, Inc., Plaintiffs–Appellants,**

**v.**

**SECURITY BENEFIT LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 93–1424.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1994.

Decided July 8, 1994.

892

ThomasThomas M. Bramhall, Little Rock, AR, argued, for appellant.

Byron Freeland, Little Rock, AR, argued (Marshall S. Ney, on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

In 1984, Kansas-based Security Benefit Life Insurance Company ("SBL") acquired First Pyramid Life Insurance Company ("FPL"), an Arkansas insurer. SBL later applied to the Arkansas Insurance Commissioner for permission to sell FPL's block of interest sensitive life insurance policies to a financially weaker Oklahoma insurer. James McNeill and his son, Dennis, independent Arkansas insurance agents doing business as McNeill Agency, Inc., had previously sold many of these policies to their clients. The McNeills objected to SBL's proposed sale, and it was disapproved. SBL's subsequent efforts to administer the FPL policies led to many complaints by policyholders and the McNeills. Finally, in 1989, SBL terminated its Master General Agency contract with McNeill Agency.

Following the termination, the McNeills filed two lawsuits against SBL. In the first, their class action diversity claims on behalf of FPL policyholders were dismissed because plaintiffs failed to satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332(a). *See Allison v. Security Ben. Life Ins. Co.,* 980 F.2d 1213 (8th Cir.1992). In this diversity action, the McNeills allege that SBL wrongfully terminated the agency contract and tortiously interfered with their ongoing client relationships. The district court[1] granted summary judgment in favor of SBL, and the McNeills appeal. Having reviewed

---

1. The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas.

the district court's decision to grant summary judgment and its interpretation of Arkansas law *de novo*, we affirm.

## I. Wrongful Termination.

■ McNeill Agency's contract with SBL provided that either party "may terminate this Agreement without stating any cause" by written fifteen-day notice. Though SBL gave the required notice, the McNeills contend that SBL acted in bad faith by terminating the contract in retaliation for the agency's vigorous protection of the rights of SBL policyholders. Assuming those allegations to be true, the district court granted summary judgment dismissing this claim, concluding that SBL was entitled to terminate the relationship in accordance with the contract's terms:

> While the action of the McNeills in protecting policyholders may be laudable, it does not rise to the level of protected speech or conduct, nor does it constitute a legally impermissible reason for cancelling the agency contract.

■ On appeal, the McNeills rely upon a line of Arkansas cases holding that an employer may not terminate an at-will employee if "the reason for the discharge was in violation of [a] well established public policy." *Wal–Mart Stores, Inc. v. Baysinger*, 306 Ark. 239, 812 S.W.2d 463, 466 (1991); *see Mapco, Inc. v. Payne*, 306 Ark. 198, 812 S.W.2d 483 (1991); *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). The McNeills argue that their vigorous protection of policyholders after SBL acquired FPL was consistent with the public policy of Arkansas as reflected in its insurance laws. *See* Ark. Code Ann. § 23–63–502(a)(2)(A) ("the public interest and the interests of policyholders and shareholders are or may be adversely affected when.... [c]ontrol of an insurer is sought by persons who would utilize the control adversely to the interests of policyholders").

The problem with this argument is that McNeill Agency was an independent agent

organization, not an employee of SBL. The McNeills cite no case—from Arkansas or elsewhere—extending this doctrine beyond employment-at-will relationships. We have found a few cases from other jurisdictions discussing the issue, and all have declined to extend the public policy exception to independent contractors such as insurance agents. *See Harris v. Atlantic Richfield Co.*, 14 Cal.App.4th 70, 17 Cal.Rptr.2d 649, 652 (1993) (franchisee); *Ostrander v. Farm Bureau Mut. Ins. Co.*, 123 Idaho 650, 653, 851 P.2d 946, 949 (1993) (insurance agent); *Wilmington v. Harvest Ins. Cos.*, 521 N.E.2d 953, 956 (Ind.Ct.App.1988) (insurance agent).

■ The provision in the agency contract permitting termination without cause is consistent with express Arkansas law. *See* Ark. Code Ann. § 23–64–221 ("Subject to the terms of the agency contract, an insurer may terminate an agent's appointment at any time"). Extending the employment law public policy exception to independent insurance agents, as the McNeills urge, would effectively nullify the termination-without-cause provision in the contract, contrary to this express statutory authorization. In these circumstances, we agree with the district court that the Supreme Court of Arkansas would decline to extend the public policy exception to independent insurance agents. Thus, SBL's termination of McNeill Agency was not wrongful under Arkansas law.

## II. Tortious Interference.

■ "The elements of the tort of interference are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Mid–South Beverages, Inc. v. Forrest City Grocery Co.*, 300 Ark. 204, 778 S.W.2d 218, 219 (1989). The McNeills allege that a wide variety of SBL actions tortiously interfered with the McNeills' long-

standing relationships with SBL policyholders. As a general proposition, we agree with the McNeills (i) that an independent insurance agent has ongoing business relationships with its clients that are independent of the policyholders' contracts with insurers, and (ii) that an insurer can be liable for tortiously interfering with such agent-policyholder relationships. *See Benny M. Estes & Assoc. v. Time Ins. Co.*, 980 F.2d 1228, 1231 (8th Cir.1992). The question remains, however, whether the district court properly granted SBL summary judgment on the facts of this case. This requires closer examination of the McNeills' specific allegations of interference.

■ The McNeills allege that SBL "indirectly" interfered with their relations with SBL policyholders by repeatedly breaching the interest sensitive policies.[2] The district court held that "[a]n agent's dissatisfaction with the manner in which a principal deals with customers simply cannot support a tortious interference cause of action." On the facts of this case, we agree. *See Cutter v. Lincoln Natl. Life Ins. Co.*, 794 F.2d 352, 357 (8th Cir.1986) (agent may not claim tortious interference where "principal is overseeing contracts made by the agent in the principal's behalf").

■ Interference with contractual relations is an intentional tort. *See Prosser & Keeton on the Law of Torts* § 129, at 982 (5th ed. 1984). To be actionable, the defendant's conduct must be aimed at capturing "some identifiable benefit [that] formerly belonged to the plaintiff, be it pecuniary or competitive." *DeVoto v. Pacific Fidelity*

*Life Ins. Co.*, 618 F.2d 1340, 1348 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). Absent evidence that SBL breached its obligations under the policies *for the purpose of* interfering with the McNeills' independent relationships with the policyholders, any effect on those relationships is incidental and may not constitute tortious interference. *See Hales v. Ashland Oil, Inc.*, 342 So.2d 984, 986 (Fla.App.1977), *cert. denied*, 359 So.2d 1214 (Fla.1978); *Bank Computer Network Corp. v. Continental Ill. Nat'l Bank & Trust*, 110 Ill.App.3d 492, 66 Ill.Dec. 160, 167, 442 N.E.2d 586, 593 (1982); *K & K Management, Inc. v. Lee*, 316 Md. 137, 557 A.2d 965, 975–978 (1989).[3]

■ The McNeills also allege that, after terminating McNeill Agency,[4] SBL made false statements to other insurance companies about the McNeills, told policyholders the McNeills were misinterpreting the policies, refused to provide the McNeills with information regarding their clients' policies, and urged policyholders "to ignore the McNeills as their agent and to continue their relationship with SBL." On their face, these allegations come much closer to actionable tortious interference—they describe intentional SBL acts directed at the McNeills' relations with their clients for the purpose of capturing some aspect of those relations for the benefit of SBL.

However, there is a crucial element missing. Under the Arkansas law of tortious interference, plaintiff "must allege and prove that a third person either did not enter into or failed to continue a contractual relationship with the claimant as a result of the unauthorized conduct of the defendant."

---

2. The breaches are those alleged in *Allison:* SBL sent out erroneous annual reports and policy lapse notices, refused to honor premium options, and assessed unauthorized charges. *See* 980 F.2d at 1214–15.

3. This also disposes of the McNeills' allegation that SBL interfered with their client relations by selling off blocks of FPL policies to weaker insurers. As these transactions were in no way directed at the McNeills' relations with their clients, they cannot constitute tortious interference with those relations.

4. SBL's termination of the McNeills' agency contract cannot be the basis for a claim of tortious interference because any adverse effect on their relations with policyholders is an incidental consequence of the alleged wrongful termination, not an independent basis for liability in tort. *See Quinn Cos. v. Herring–Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94, 95 (1989) ("breach of a contract is not a tort"); *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416, 418 (1964).

*Navorro–Monzo v. Hughes,* 297 Ark. 444, 763 S.W.2d 635, 636 (1989). *See also Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543, 546 (1969). The McNeills have made no showing—indeed, they have not even clearly alleged—that they or McNeill Agency lost policyholder clients as a result of this alleged interference. Nor have they alleged that SBL wrongfully deprived them of post-termination commissions on FPL or SBL policies. *Cf. Nicholson v. Simmons First Nat'l Corp.,* 312 Ark. 291, 849 S.W.2d 483, 488 (1993). Thus, even if SBL over-stepped the bounds of fairness in competing for the policyholders' loyalty after terminating McNeill Agency, the district court properly granted summary judgment dismissing the McNeills' tortious interference claims.

## III. Fraud.

Finally, the McNeills argue that the district court erred in dismissing their fraud claims, which are similar to the fraud claims asserted by the plaintiffs in *Allison.* The district court properly dismissed those claims on the basis of our *Allison* opinion. *See* 980 F.2d at 1215–16.

The judgment of the district court is affirmed.