Teri HARVEY, Appellant,

v.

CARE INITIATIVES, INC. d/b/a Fonda
Care Center a/k/a Fonda Nursing
and Rehab Center, Appellee.

No. 99–1074.

Supreme Court of Iowa.

Oct. 10, 2001.

Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellant.

David L. Charles and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellee.

CADY, Justice.

In this appeal we must decide if a tort action for retaliatory termination of employment is applicable to independent contractors. We conclude an independent contractor has no tort action for retaliatory termination of a contract under the allegations of the petition and affirm the summary judgment granted by the district court.

## I. Background Facts and Proceedings.

Teri Harvey worked for Care Initiatives, Inc. under a written contract, which included a provision for termination of the agreement upon thirty days notice by either party. Care Initiatives operated a nursing home and rehabilitation center in Fonda, Iowa. Harvey performed various social worker services at the nursing home as a consultant. The contract required Harvey to work twelve hours each week for the home. She had similar contracts with other nursing homes. Harvey acknowledged she was an independent contractor.

Care Initiatives gave Harvey written notice of the termination of the contract a few months after Harvey started her employment under the contract. Harvey responded by filing an action for wrongful termination.[1] She claimed the termination violated public policy.

Care Initiatives moved for summary judgment. It claimed a cause of action for wrongful discharge in violation of public policy did not exist for independent contractors. In response to the motion for summary judgment, Harvey produced documents suggesting she was terminated for allegedly filing a complaint about the nursing home with the state's Department of Inspection and Appeals. The complaint centered on a number of changes implemented by the nursing home administrator, including a ban on smoking by resi-

---

1. The petition also included a claim for slander. This claim was dismissed by the district court, and does not form the basis of any issue on appeal.

dents and staff. Harvey disagreed with the ban, and voiced her opposition to the administrator. Harvey believed the ban violated the rights of the residents.

Shortly after the smoking ban went into effect, the Department of Inspection and Appeals made a surprise inspection of the nursing home to look into a complaint that rights of the residents were being violated. Harvey received the written termination notice the same day. She continued to be paid for thirty days.

The district court granted the motion for summary judgment. It determined Harvey had no claim for retaliatory discharge.

Harvey appeals. She argues the same public policy protection against retaliatory discharge for employees at-will should extend to independent contractors.

## II. Standard of Review.

■ Our review of a ruling granting summary judgment is for correction of errors at law. *Am. Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163 (Iowa 1997).

## III. Wrongful Discharge.

■ An at-will employee has a cause of action in tort for wrongful termination of employment when discharged by an employer in violation of public policy. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 281 (Iowa 2000). This cause of action is a recognized exception to the at-will employment doctrine, which would otherwise serve to deprive a wrongfully discharged employee of a remedy. *Id.* In first adopting this public policy exception in 1988, we determined the cause of action was necessary to prevent the conduct of an employer to fly in the face of clear public policy. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560–61 (Iowa 1988). We also recognized that our employment laws should accommodate the clear expectations of a worker, and protect against the improper interference with those expectations. *Id.* No employee should face the dilemma of giving in to improper threats by employers or be subject to discharge without a remedy. *See Fitzgerald*, 613 N.W.2d at 284; *Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997) ("Terminating an employee for refusing to do an illegal act is a violation of public policy.").

■ We have never squarely considered whether the wrongful discharge tort encompasses those who hire independent contractors, as well as the employer-employee relationship. Generally, most courts have refused to extend a wrongful termination action to independent contractors and other non-employees. *See Driveaway & Truckaway Serv., Inc. v. Aaron Driveaway & Truckaway Co.*, 781 F.Supp. 548, 551–52 (N.D.Ill.1991); *Sistare–Meyer v. YMCA*, 58 Cal.App.4th 10, 67 Cal. Rptr.2d 840, 842, 844 (1997); *Ostrander v. Farm Bureau Mut. Ins. Co.*, 123 Idaho 650, 851 P.2d 946, 947 (1993); *New Horizons Elecs. Mktg., Inc. v. Clarion Corp.*, 203 Ill.App.3d 332, 149 Ill.Dec. 5, 561 N.E.2d 283, 285 (1990); *Wilmington v. Harvest Ins. Cos.*, 521 N.E.2d 953, 956 (Ind.Ct.App.1988) (dicta); *MacDougall v. Weichert*, 144 N.J. 380, 677 A.2d 162, 166 (1996); *see also Birchem v. Knights of Columbus*, 116 F.3d 310, 315 (8th Cir.1997) (N.D.law); *McNeill v. Sec. Benefit Life Ins. Co.*, 28 F.3d 891, 893 (8th Cir.1994) (Ark.law). *But see Danco, Inc. v. Wal–Mart Stores, Inc.*, 178 F.3d 8, 13–14 (1st Cir.1999) (statute sufficiently broad to include independent contractors); *Marquis v. City of Spokane*, 130 Wash.2d 97, 922 P.2d 43, 51 (1996) (same). These courts recognize a long-standing distinction in the law between employees and independent contractors. We think this distinction is fundamental to our analysis in considering

whether to extend the tort to independent contractors.[2]

In *Springer*, we adopted the tort of wrongful discharge primarily out of need, without defining the source of that need. We reasoned that an employer could otherwise trample on clear public policy mandates and expectations in terminating employees. *See Springer*, 429 N.W.2d at 560–61. Yet, other courts have found the source of this need to be derived from the inequity of the bargaining position in a typical at-will employer-employee relationship, and the inability of employees to otherwise obtain protection. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 357 (1978); *New Horizons Elecs. Mktg., Inc.*, 149 Ill.Dec. 5, 561 N.E.2d at 285; *MacDougall*, 677 A.2d at 166.

On the other hand, independent contractors do not require the same type of protection. *Sistare–Meyer*, 67 Cal. Rptr.2d at 844. They have greater control and flexibility in their work and in the hiring process, and the hiring party assumes fewer responsibilities towards independent contractors than at-will employ-

ees.[3] *Id.* The distinct differences in the nature of the relationship between independent contractors and at-will employees not only suggest a greater need to protect at-will employees, but existing principles of contract law provide independent contractors with remedies not available to employees.[4] *See New Horizons Elecs. Mktg., Inc.*, 561 N.E.2d at 286–87; *MacDougall*, 677 A.2d at 166. Thus, an independent contractor can not only negotiate the circumstances governing the termination of a contract, but has contract remedies to enforce all expressed or implied terms of a contract. This diminishes the need for court-based remedies. Moreover, judicial extension of tort remedies into contracts without clear legislative authority can essentially nullify terms agreed to by the parties to the contract. *See McNeill*, 28 F.3d at 893. We find no compelling need, as we did for at-will employees, to support a wrongful termination tort for independent contractors.

This conclusion, however, does not end our analysis. We must also consider whether our legislature intended to estab-

2. For purposes of this appeal, Harvey concedes her status as an independent contractor. Normally, this would require a factual determination based on the nature of the working relationship and many other circumstances, not necessarily on any label used to identify the parties in the contract. *Rouse v. State*, 369 N.W.2d 811, 813 (Iowa 1985) (ordinarily, the relationship of employer and employee is a question of fact); *see Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542–43 (Iowa 1997) (listing factors to consider in characterizing nature of relationship).

3. Employees have many benefits that independent contractors do not have, such as worker's compensation coverage, unemployment benefits, and employer contributions to social security. *See* Donald R. Mouton, Comment, Ostrander v. Farm Bureau Mutual Insurance Company: *Why is the Idaho Supreme Court Providing No Recourse to Independent*

*Contractors Discharged in Bad Faith?*, 31 Idaho L.Rev. 353, 362 (1994). However, employees are subject to much greater control and supervision by their employers. *Id.; see Sistare–Meyer*, 67 Cal.Rptr.2d at 844.

4. The availability of contract remedies is all that is required, not a particular remedy that will actually provide relief. *See Driveaway & Truckaway Serv., Inc.*, 781 F.Supp. at 552. It is generally recognized that there is an implied covenant of good faith and fair dealing in a contract. *See* Restatement (Second) of Contracts § 205, at 99 (1981); 17A Am.Jur.2d *Contracts* § 380, at 401 (1991). We also recognize that a contract in violation of public policy is void. However, we need not examine these general rules because Harvey's claim does not rest on contract theories, nor does she assert that tort theories are necessary because no contract claims exist.

lish a wrongful discharge action for independent contractors by declaring public policy that would embrace non-employees.

■ We have stressed that the tort of wrongful termination must be based upon a clear, well-recognized public policy. *Fitzgerald*, 613 N.W.2d at 282; *Springer*, 429 N.W.2d at 560. Additionally, we primarily look to our statutes to find a declaration of public policy. *Fitzgerald*, 613 N.W.2d at 283.

Iowa Code section 135C.46 declares a clear public policy against retaliatory discharge for initiating or participating in a complaint against a health care facility. Iowa Code § 135C.46(1) (1997). It provides, in relevant part:

A facility shall not ... retaliate in any way against a resident or an employee of the facility who has initiated or participated in any proceeding authorized by this chapter.

*Id.* Yet, the language of the statute restricts its protection to "a resident or an employee of the facility." *Id.*

■ The statute does not define the term "employee." Thus, we first look to the ordinary and common meaning of the term. Iowa Code § 4.1(38); *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 162 (Iowa 1999). Furthermore, we construe statutory language consistent with our case law and the common law. *See State v. Pace*, 602 N.W.2d 764, 771 (Iowa 1999) (common law); *Sourbier v. State*, 498 N.W.2d 720, 723 (Iowa 1993) (case law). Words that have a well-defined meaning in the common law have the same meaning in statutes dealing with similar subject matter. *See* 2B Norman J. Singer, *Sutherland Statutory Construction* § 50.03, at 150 (Clark Boardman Callaghan 6th ed.2000).

The term "employee" has traditionally been understood to relate to a master-servant relationship, and our laws have always drawn a distinction between an employee and an independent contractor in deciding whether an employment relationship exists. *See Kragel v. Wal–Mart Stores, Inc.*, 537 N.W.2d 699, 702 (Iowa 1995) (negligence); *Mermigis v. Servicemaster Indus., Inc.*, 437 N.W.2d 242, 245 (Iowa 1989) (worker's compensation). In an employment setting, an employee has a far different meaning than an independent contractor. *See Iowa Mut. Ins. Co.*, 572 N.W.2d at 542 (in cases categorizing the employment relationship, the difference between an employee and an independent contractor primarily focuses on the extent of control). Similarly, the United States Supreme Court has consistently taken the position that when Congress uses the term "employee" without providing a specific definition, it intends to use the conventional master-servant relationship based upon common law doctrines. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581, 589 (1992).

Clearly, our legislature could have extended broad coverage of the prohibition against retaliation under section 135C.46 in the same manner as it provided that any "person" could file a complaint against a health care facility alleging violation of a requirement or rule under section 135C.37. This section provides, in relevant part:

A person may request an inspection of a health care facility by filing with the department ... a complaint of an alleged violation of applicable requirements of this chapter or the rules adopted pursuant to this chapter.... The name of the person who files a complaint with the department ... shall be kept confidential....

Iowa Code § 135C.37. Moreover, our legislature specifically defined a "person" very broadly to include "any individual, firm,

partnership, corporation, company, association or joint stock association." *Id.* § 135C.1(14). Thus, our legislature clearly wanted all persons to report violations. Yet, when the legislature came to framing its protection from discrimination and retaliation for those who do file complaints, it limited its scope to an "employee" or a "resident." It narrowed its approach from any "person" to any "resident" or "employee." We must presume this limitation was intended, and that our legislature intended to exclude independent contractors. *See Pace,* 602 N.W.2d at 771. Thus, the public policy against retaliatory discharge expressed by our legislature in section 135C.46 does not apply to independent contractors.

■ We recognize an argument exists that an independent contractor should not have its contract terminated by exposing alleged wrongdoing any more than an employee should not be terminated for exposing the same alleged wrongdoing. *See* Mouton, 31 Idaho L.Rev. at 360–62. However, we must refrain from extending protection to workers from unfair treatment after our legislature has weighed in on the issue and established the parameters of the governing public policy. Additionally, we must avoid declaring public policy with generalized concepts of fairness and justice. *Fitzgerald,* 613 N.W.2d at 283.

Notwithstanding, Harvey argues that a specific public policy to support a tort for independent contractors can be derived from section 135C.37. She points out that not only does the statute permit all "persons" to file complaints, but it also protects complainants by requiring their names to be kept confidential. Iowa Code § 135C.37. She argues this reveals our legislature wanted to encourage persons to file complaints, and any retaliation for doing so would undermine this policy.

■ We do not limit our search for public policy to statutes like section 135C.46 which specifically mandate protection. *See Fitzgerald,* 613 N.W.2d at 283. Statutes can imply a prohibition against termination as well as express it. *Id.* However, section 135C.37 cannot be viewed in isolation. *See State v. DeCamp,* 622 N.W.2d 290, 294 (Iowa 2001). Our legislature has made it clear through section 135C.46 that the prohibition against retaliatory discharge only applies to residents and employees of the health care facility. If our legislature wished to extend the prohibition to all persons, it would have used the term "persons."

## IV. Conclusion.

We fail to discern any clear public policy that prohibits a person or business from discharging an independent contractor in retaliation for reporting a health care facility violation. We conclude there is no cause of action in Iowa for retaliatory discharge of an independent contractor for filing a complaint against a care facility. The district court properly granted summary judgment.

**AFFIRMED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior judge assigned by order pursuant to     Iowa Code section 602.9206 (2001).