PRECISION INDUSTRIES, Plaintiff,

v.

BEHNKE LUBRICANTS, INC. and Pressure–Lube, Inc., d/b/a JAX Lubricants, Defendants.

No. 1:04–CV–90033.

United States District Court,
S.D. Iowa,
Western Division.

May 12, 2005.

Bruce Brian Green, Willson & Pechacek, PLC, Council Bluffs, IA, Gerald P. Laughlin, Kelly R. Dahl, Thomas O. Ashby, William G. Dittrick, Baird Holm McEachen Pedersen Hamann & Strasheim, James B. Cavanagh, William G. Garbina, Lieben Whitted Houghton Slowiaczek & Cavanagh PC LLO, Omaha, NE, for Plaintiff.

Bruce A. McIlnay, Mark S. Schmitt, Maier McIlnay Schmitt & Button LTD, Grafton, WI, J. Campbell Helton, Whitfield & Eddy PLC, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court is the Defendants', Behnke Lubricants, Inc. ("Behnke") and Pressure–Lube, Inc ("Pressure–Lube"), d/b/a JAX Lubricants (collectively "the Defendants"), Motion for Partial Summary Judgment (Clerk's No. 27). Plaintiff Precision Industries ("Precision") originally filed the present action in the Iowa Dis-

trict Court for Pottawattamie County, and the Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *See* Clerk's No. 1. Venue is proper under 28 U.S.C. § 1391(b).

In its amended Complaint (Clerk's No. 16), Precision states numerous claims against the Defendants under several theories based on Defendants' alleged breach of contract and interference with Precision's business relationships.[1] The Defendants, in turn, raised counterclaims against Precision for breach of contract and extortion. *See* Clerk's Nos. 12 and 23. After receiving Precision's reply to the counterclaims (Clerk's No. 22), the Defendants moved for partial summary judgment on one of its counterclaims against Precision, alleging that no genuine issue of fact exists concerning Precision's failure to pay for JAX products. (Clerk's No. 23). The matter is fully submitted on this issue, and for reasons explained below, Defendants' motion is DENIED.

## I. BACKGROUND

Precision is a Nebraska corporation with its principal place of business in Omaha, Nebraska. The Defendants, Behnke and Pressure–Lube, are Wisconsin corporations, each with their principal place of business in Menomonee Falls, Wisconsin, that sell their products throughout the United States, including parts of Iowa and Nebraska, via Precision and other distributors. JAX is a registered trademark of Behnke, and is used by the Defendants to identify their products. Precision became an authorized distributor of JAX in 1997. The JAX trademark is used in the marketing of Behnke and Pressure–Lube's lubri-

cation products, which are used in many manufacturing and processing companies in the United States. Precision distributed JAX lubrication products to customers who are end users of the products in a variety of production capacities.

In June of 2002, Behnke sent a letter to Precision. Among other things, the letter stated that Behnke was "solidly behind all [Precision's] efforts to increase JAX presence in [its] lubricant sales, and [its] customer relationships." The letter also implied that JAX could help Precision obtain more business with end-use customers, specifically Tyson Foods, Inc. ("Tyson"). Finally, the letter noted that "JAX had opened up all markets to [Precision] over a year ago." Precision had increased annual sales of JAX products from $32,000 in 1997 to approximately $900,000 in 2002. Precision alleges that the Defendants knew Precision had entered into a multimillion dollar supply agreement with Tyson during 2001 and 2002, and that the existence of the Tyson contract was the motivating force behind the letter encouraging Precision to further promote JAX products. Precision claims that its ability to fulfill many of its national contracts required reliance on the Defendants' willingness and agreement to sell JAX lubrication products to Precision for distribution. Precision also contends that the letter from Behnke was, in reality, only a means of obtaining information about Precision's customers so the Defendants' could begin selling JAX directly to the end-users without utilizing distributors like Precision. The Defendants deny having had any knowledge of Precision's contract with Tyson and deny that the letter was intended to or resulted in discovery of any informa-

---

1. Precision's claims against Defendants include: tortious interference with a business relationship; fraudulent misrepresentations and inducement; breach of contract; Iowa's implied covenant of good faith and fair deal-

ing; detrimental reliance; promissory estoppel; violation of Iowa's Trade Secrets Act; violation of the Sherman Act; and violation of Iowa's Competition Laws.

tion about Precision, its customers, or its business practices.

Precision alleges that it had a Distribution Agreement with the Defendants, evidenced by the June 2002 letter, whereby Defendants agreed to fill JAX orders pursuant to contracts that Precision entered into with JAX consumers. Precision admits, however, that there was no formal written agreement described as a Distribution Agreement ever signed between the parties. The Defendants deny the existence of any Distribution Agreement and deny failing to fulfill any purchase order from Precision prior to May 14, 2004, when the business relationship between the parties ceased. Precision contends that the Defendants wrongfully terminated it as a distributor of JAX products on May 14, 2004, and breached the contracts for the remaining unfilled purchase orders.

On May 24, 2004, the Defendants met with Tyson and offered to sell JAX products and supplies to it directly or through other JAX distributors. Precision argues that this act by the Defendants was in knowing and direct interference with the supply contract in place between Precision and Tyson. Precision also alleges that the Defendants' actions have resulted in Precision's inability to service its customers. The Defendants admit informing Tyson that Precision was no longer an authorized JAX distributor, but deny knowingly and directly interfering with any supply contract between Precision and Tyson.

At issue on this motion for partial summary judgment is one of the Defendants' counterclaims against Precision. The counterclaim at issue stems from the business transactions between Precision and the Defendants prior to the cessation of business dealings on May 14, 2004. The Defendants allege that Precision has $73,099.91 in JAX products for which Precision has not yet paid. Behnke's share of the outstanding payment is $58,739.73, and Pressure Lube's share is $14,360.18. Precision admits that it had purchased products from the Defendants prior to filing this lawsuit, but disputes the amount owed to Defendants. Further, Precision raises the affirmative defenses of prior breach of contract and setoff.

## II. LEGAL STANDARDS

All Federal Rules of Civil Procedure should "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R.Civ.P. 1. Federal Rule of Civil Procedure 56(c) provides for summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment "is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (citations omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The nonmoving party "may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial." *Bell Lumber & Pole Co. v. U.S. Fire Ins. Co.,* 60 F.3d 437, 445 (8th Cir.1995). In order to survive a motion for summary judgment, the nonmoving party must present enough evidence for a reasonable jury to return a verdict in his or her favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inference." *United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir. 1990). The Court does not weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.* The underlying substantive law determines which facts are "material," and an issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505.

 When the parties' dispute involves both claims and counterclaims, a court may enter partial summary judgment, resolving any issues for which there are no material facts in dispute, while reserving the remaining claims for which there are genuine disputes for resolution at the trial stage. Rule 56(d) states:

If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d). Partial summary judgment can serve a useful purpose by resolving before trial "matters wherein there is no genuine dispute." *Rotorex Co. Inc. v. Kingsbury Corp.,* 42 F.Supp.2d. 563, 570–71 (D.Md.1999) (citing Adversary Committee Notes to 1946 amendments to Rule 56). Summary judgment cannot be utilized, however, "to deprive a litigant his right to try any genuine issue by jury or otherwise." *Parmelee v. Chicago Eye Shield Co.,* 157 F.2d 582, 585 (8th Cir.1946) (citing *Whitaker v. Coleman,* 115 F.2d 305 (5th Cir.1940)).

## III. DISCUSSION

 The determinative question is whether a genuine issue of material fact exists concerning Defendants' counterclaim regarding Precision's nonpayment of accepted goods. Defendants argue that no genuine issues of material fact remain because Precision has admitted to receiving JAX goods prior to May 14, 2004, for which it has not paid Defendants. Iowa Code § 554.2709(1)(a) provides: "When a

buyer fails to pay the price as it becomes due, the seller may recover, together with any incidental damages under the next section, the price (a) of the goods accepted...." Iowa Code § 554.2709(1)(a) (2001).[2] The policy behind this section is to put the aggrieved party "in as good a position as if the other party had fully performed." *Purina Mills, L.L.C. v. Less,* 295 F.Supp.2d 1017, 1032 (N.D.Iowa 2003). If the goods cannot be returned to the seller at the same value, the only way to put the seller in his or her rightful position is to allow recovery of the sale price. *See id.* at 1033 ("If the buyer has accepted the goods and cannot throw them back on the seller, the seller is entitled as a matter of course to the full contract price.") (citation omitted). Yet, in order to "recover the price of goods sold under section [554.2709], the plaintiff-seller must" establish: (1) it performed according to the terms of the contract; (2) the goods were accepted by the buyer; (3) the price of goods was accepted; (4) that the due date for payment has past; and (5) that the buyer has failed to pay. *Id.*

▇▇▇ Precision argues that summary judgment is not proper because there is a genuine issue of material fact regarding whether Defendants performed according to the implied terms of the sales agreement. Specifically, Precision claims that Defendants breached their obligation of good-faith and fair dealing when they removed Precision as an authorized dealer of JAX products without notice on May 14, 2004. This implied duty of good-faith and fair dealing is recognized in Iowa courts. *Harvey v. Care Initiatives Inc.,* 634

N.W.2d 681, 684 n. 4 (Iowa 2001); *see* Restatement (Second) of Contracts § 205 at 99 (1981); 17A Am.Jur.2d Contracts § 380 at 401 (1991). "The phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Kooyman v. Farm Bureau Mut. Ins. Co.,* 315 N.W.2d 30, 34 (Iowa 1982) (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). The implied duties include those duties that necessarily stem from the terms of the agreement itself.

Precision was an authorized distributor of JAX products beginning in 1997 and ending May 14, 2004. Over that time, Precision substantially increased its sales of JAX products and entered into contracts with various companies for the purchase of JAX products. When Defendants removed Precision as a dealer without notice, argues Precision, it was left with JAX products that it could not distribute due to the fact that it had to quickly find alternative sources and new products to fill its customers' orders. Precision argues that it justifiably expected Defendants to provide notice that Precision was going to be removed as a distributor because part of the parties' common purpose was for Precision to enter into long term contracts to benefit both parties. This implied expectation is supported by language found in a letter to Precision, from Defendants, re-

---

2. Federal courts, in diversity cases, must apply the substantive law of the forum state in the absence of controlling federal law. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). The parties do not dispute that Iowa law is applicable to Defendants' counterclaim. Accordingly, Iowa law will be applied to the contract dispute. *Whirlpool v. Ritter,* 929 F.2d 1318 (8th Cir.1991).

ceived on June 6, 2002, which stated in part:

> [W]e are solidly behind all of your efforts to increase JAX presence in your lubricant sales, and your customer relationships.... Finally, you questioned our loyalty in years past to our valued distributors. You should understand this: we are very loyal to all of our distributor partners who show loyalty and enthusiasm for JAX. Precision Industries has been in that group for over four years now, and we would honestly like them to stay there. If the commitment from Precision is loyal and strong, JAX commitment to you will be unwavering.

Pl.'s Ex. A.

In contrast to the language found in the letter, Defendants' counterclaim for payment of unpaid goods states: "Both Behnke and Pressure–Lube had the legal right at all times to terminate any business relationship with Precision, whether with or without cause." Defs.' Answer at 12. Further, Defendants wrongly assert in their motion for partial summary judgment that the only defense Precision raised in response to Defendants' counterclaim was that "it has 'set-off' rights in excess of the amount claimed by Behnke and Pressure Lube."[3] Precision's response to Defendants' counterclaim raises an affirmative defense of breach of contract in addition to mention of the doctrine of set-off. Viewing the facts in the light most favorable to Precision, it appears that Precision justifiably expected Defendants to be "unwavering" in their support of Precision's contracts with JAX users. Such an expectation, if proven at trial, would preclude Defendants from terminating the distribution relationship without prior notice and/or refusing to fill already submitted purchase orders from Precision. Therefore, a genuine issue of material fact remains regarding whether Defendants breached the implied duty of good faith and fair dealing contained within the purchase agreements.

The Eighth Circuit decision in *Parmelee* presented a similar factual situation. *Parmelee*, 157 F.2d at 584. In that case, the defendant argued that summary judgment was not proper on one of plaintiff's claims due to the existence of counterclaims that involved the same transaction or occurrence. *Id.* In the present situation, Precision argues that the existence of its original claims precludes an order of summary judgment on Defendants' counterclaim. In *Parmelee*, the plaintiff moved for summary judgment because the defendant admitted that plaintiff sold and delivered to the defendant goods valued at $ 6625.50. The Eighth Circuit Court of Appeals held that granting plaintiff's motion for summary judgment was improper because plaintiff's claim concerned the same transaction as defendant's counterclaims. Similarly here, Precision's claims of fraudulent misrepresentation and inducement into sales contracts and Precision's breach of contract claim based on a distribution agreement, are part of the same transaction that concerns Defendants' counterclaim. Defendants' have not moved for summary judgment on any of Precision's claims, simply on its counterclaim in isolation. If summary judgment was granted, Precision would be foreclosed from trying issues relevant to its pending claims, for which there has been no motion for summary judgment. " '[A party] is not at

---

**3.** Under Rule 13, simply asserting that damages for one party's claim would be in excess of the damages resulting from a claim for which summary judgment is sought, would not be sufficient to preclude summary judgment on that claim, if there were no genuine issues of material fact that needed to be resolved at trial.

liberty to select an isolated act or fact, which is only one of a series of acts or steps in the entire transactions, and insist upon a judgment on this fact alone, if the fact is so connected with others that it forms only a portion of the transaction.'" *Parmelee*, 157 F.2d at 586 (quoting *Story & Isham Commercial Co. v. Story*, 100 Cal. 30, 34 P. 671, 674 (1893)).

■ Even assuming arguendo that summary judgment was proper on the issue of liability, there is a genuine issue of material fact in dispute regarding the amount of money that is due, precluding this Court from making a finding at summary judgment in regards to damages.[4] To prove its damages, the Defendants have presented affidavits and invoices evidencing a debt of $73,099.91 in unpaid JAX products. Defendants have not, however, filed anything to show what Precision has or has not paid, or any written correspondence between the parties regarding the debt collection. Precision counters with an affidavit from Sheli Rice, its Accounts Payable Controller, who asserts that Precision's records do not show a debt of $73,099.91 for JAX products, which she concludes means "that either Precision has paid more to JAX than JAX has given credit for, or that Precision did not receive from JAX the type or quantity of products which JAX claims it has provided to Precision." (Pl.'s App. at 4–5). Thus, while acknowledging that some JAX products were accepted by Precision prior to the May 14 cessation of dealings, Precision, through Rice's affidavit, contests the amount of goods that were accepted and their prices.

■ The Defendants make much of the fact that Rice did not provide the actual amount of money that Precision owes in her affidavit. She did, however, state by cross-referencing statements of accounts received from JAX with invoices posted to Precision's accounting system, she "determined that Precision Industries, Inc. does not have an outstanding accounts payable balance of $73,099.91 with JAX Lubricants." (Pl.'s App. at 4–5). The amount of money owed and for which goods that sum is owed are certainly material issues to the Defendants' counterclaim against Precision. *See* Iowa Code § 554.2709 (requiring a plaintiff to prove the cost of goods and that they were accepted, among other things, in order to recover against a defendant). While Precision only has Rice's affidavit to oppose the affidavit and accompanying invoices introduced by the Defendants, it is not for the Court to weigh the quality of the evidence when determining whether to grant summary judgment. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). It is sufficient for the purposes of summary judgment that Rice's affidavit is based on her asserted knowledge that Precision has less than $73,099.91 in debt outstanding to the Defendants for JAX products.

## IV. CONCLUSION

In this case, genuine issues of material fact remain concerning whether Defendants' "performed according to the terms of the contract," and whether the payment of goods can be separated from the parties' distribution relationship. While the affirmative defense of set off to the Defendants' counterclaim for nonpayment for goods received does not, as a matter of law, relieve this Court of the ability to issue a partial summary judgment on the

---

4. Under 54(b), "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R.Civ.P. 54(b).

counterclaim, the genuine disputes as to material facts relevant to recovery under Iowa Code 554.2709(1)(a) do preclude summary judgment at this stage. For the foregoing reasons, the Defendants' motion for partial summary judgment on the issue of nonpayment for JAX products received by Precision is DENIED.

IT IS SO ORDERED.