# IN THE SUPREME COURT OF IOWA

No. 18–1600

Filed December 13, 2019

**DEBORAH FERGUSON,**

Appellee,

vs.

**EXIDE TECHNOLOGIES, INC.** and **FRED GILBERT,**

Appellants.

---

Appeal from the Iowa District Court for Delaware County, Michael J. Shubatt, Judge.

An employer appeals a district court decision finding Iowa Code section 730.5 (2016) does not provide the exclusive civil remedy for its violation and the district court's award of attorney fees. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Thomas D. Wolle of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellants.

Amy Beck and David R. Albrecht of Fiedler Law Firm P.L.C., Johnston, for appellee.

**PER CURIAM.**

In this case, we must primarily decide whether a civil enforcement mechanism granted by the legislature in a statute regulating drug testing in the workplace forecloses judicial recognition of an overlapping common law tort for wrongful discharge in violation of public policy. Specifically, we must decide whether a person may bring a wrongful-discharge claim based on a violation of Iowa Code section 730.5 (2016) when the same person already has a statutory remedy under section 730.5 for the same conduct. We conclude a common law wrongful-discharge claim is not available. Accordingly, we reverse the order of the district court denying the defendants' motion for judgment notwithstanding the verdict on the common law claim, affirm the court's rulings on the section 730.5 claim, and remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Deborah Ferguson was employed by Exide Technologies, Inc. as a "wet formation operator." Her job required her to lift up to 2300 car and tractor batteries, ranging from sixty to 180 pounds, in a single shift, from one location to another. Ferguson began her work with Exide in 2012. After changes to her work duties in 2013 increased the amount of lifting she had to do, she began to experience intermittent pain in both her elbows. By September 2016, the pain had become severe and constant. In October 2016, Ferguson concluded the pain was too severe to continue working and reported her pain to her supervisor.

Ferguson was assigned lighter duty and sent to the plant nurse. She was eventually sent to a doctor who diagnosed her with "tennis elbow" in both elbows. At the doctor's office, she was informed she was required to submit to a drug and alcohol test pursuant to Exide's drug and alcohol testing policy. Ferguson refused to take the test and left the office. Under

Exide's policy, the refusal to take a drug test was considered the same as failing a drug test.

After her appointment, Ferguson, who worked the late shift, received a phone call telling her not to come into work that night. The following day, Exide terminated Ferguson from her employment for her refusal to take the drug and alcohol test.

Ferguson filed an action in district court against Exide, claiming her termination was wrongful. She brought her claim under a statute providing civil remedies against employers for violating the workplace drug-testing provisions and also asserted a claim for wrongful discharge in violation of public policy. Although it initially denied liability, Exide acknowledged it violated the drug and alcohol testing statute. Since Ferguson's refusal to take the illegal test was the reason for her firing, Exide admitted Ferguson's firing was unlawful.[1] Both parties moved for summary judgment. Exide argued Ferguson's common law claim was preempted by the civil cause of action provided under the statute. Ferguson argued both claims could be brought. The district court granted Ferguson's motion and denied Exide's motion.

Because Exide admitted to the statutory violation, the case proceeded to trial on the matter of damages alone. Ferguson requested a jury trial, which is available for a common law wrongful discharge in violation of public policy claim, but not the statutory violation. The jury awarded Ferguson $45,606.40 in lost wages and benefits and $12,000 in emotional distress damages. Exide renewed its position that the common law claim was barred as a matter of law by filing unsuccessful motions for directed verdict and for judgment notwithstanding the verdict (JNOV).

---

[1]Ferguson has since been reinstated.

Ferguson also requested attorney fees and costs allowed under the statute. She requested fees of $75,991.99. The district court only awarded fees for the portion of the work in the case devoted to the statutory claim. *See* Iowa Code § 730.5(15)(*a*)(1) (authorizing an award of attorney fees); *Smith v. Iowa State Univ. of Sci. & Tech.*, 885 N.W.2d 620, 624 (Iowa 2016) (addressing apportionment of fees when fees were available under some but not all of the plaintiff's claims). Exide objected to the amount of fees Ferguson requested and contended the fees should actually be much lower. The court awarded Ferguson $39,500 in costs and fees, broken down into $35,000 in attorney fees and $4500 in court expenses.

Exide filed an appeal from the denial of its summary judgment and JNOV motions by the district court, as well as from the amount of the attorney fees awarded. We retained the case on appeal.

## II. Standard of Review.

We review rulings on JNOV motions for correction of errors at law. *Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 790 (Iowa 2009). We review awards of attorney fees for abuse of discretion. *Lee v. State*, 874 N.W.2d 631, 637 (Iowa 2016).

## III. Wrongful Discharge in Violation of Public Policy.

This case centers on Iowa Code section 730.5, the statutory scheme providing for drug and alcohol testing of current and potential employees in Iowa. Section 730.5 is the source of the policy for Ferguson's tortious wrongful-discharge action. However, section 730.5 also provides for a civil cause of action.

> *a.* This section may be enforced through a civil action.
>
> (1) A person who violates this section or who aids in the violation of this section[] is liable to an aggrieved employee or prospective employee for affirmative relief including reinstatement or hiring, with or without back pay, or any

> other equitable relief as the court deems appropriate including attorney fees and court costs.
>
> . . . .
>
> *b.* In an action brought under this subsection alleging that an employer has required or requested a drug or alcohol test in violation of this section, the employer has the burden of proving that the requirements of this section were met.

Iowa Code § 730.5(15). We must determine whether this civil cause of action prevents an aggrieved employee from also bringing a common law wrongful-discharge action.

**A. The Wrongful-Discharge Doctrine Generally.** Employment in Iowa is generally at-will, meaning an employee may usually be fired for any reason or no reason at all. *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 300 (Iowa 2013). We first recognized an exception to the at-will doctrine, the doctrine of common law wrongful discharge in violation of public policy, in 1988. *See Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988) (en banc). *Springer* involved an employee who was discharged for filing a workers' compensation claim. *Id.* at 560. We held the workers' compensation statute created a "well-recognized and defined public policy of the state," and the wrongful-discharge action was an appropriate enforcement mechanism of that statute. *Id.* at 560–61.

Our reasoning for adopting the wrongful-discharge claim focused on the need to provide a remedy for conduct that violated legislatively declared public policy. *Id.* at 560–61. We observed, "To permit the type of retaliatory discharge which has been alleged in this case to go without a remedy would fly in the face of this policy." *Id.* at 561. We also noted "by sanctioning wrongful discharge actions for contravention of a public policy which has been articulated in a statutory scheme, we are acting to advance a legislatively declared goal." *Id.*

We have explored and reaffirmed the doctrine in many cases since *Springer*. In *Borschel v. City of Perry*, we explained that there were three primary situations when an action for wrongful discharge in violation of public policy was available. 512 N.W.2d 565, 567 (Iowa 1994). Those situations included "retaliation for performing an important and socially desirable act, exercising a statutory right, or refusing to commit an unlawful act." *Id.* (quoting 82 Am. Jur. 2d *Wrongful Discharge* § 14, at 687 (1992)). We observed that "[s]uch policies may be expressed in the constitution and the statutes of the state." *Id.*

> An employee seeking protection under the public-policy exception in his or her wrongful-discharge claim must prove the following elements:
>
> > (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason the employer discharged the employee; and (4) the employer had no overriding business justification for the discharge.

*Dorshkind*, 835 N.W.2d at 300 (quoting *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109–10 (Iowa 2011)). The parties agree all four elements are met here. The only issue is whether the remedies already provided in section Iowa Code section 730.5 foreclose the common law claim.

We further explored the rationale for the doctrine in *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681 (Iowa 2001), in which we rejected the opportunity to expand the doctrine to independent contractors. In refusing to so expand the tort, we explained we found "no compelling need, as we did for at-will employees, to support a wrongful termination tort for independent contractors." *Id.* at 684. We went on to consider whether the legislature, nonetheless, intended to provide such a remedy to

independent contractors. *Id.* at 684–85. Rejecting that contention, we observed that "we must refrain from extending protection to workers from unfair treatment after our legislature has weighed in on the issue and established the parameters of the governing public policy." *Id.* at 686.

**B. Exclusive Remedy.** Throughout the history of our common law doctrine, we have at times found a statute precludes the wrongful-discharge common law claim and at times found it does not. The most prominent example of a preemptive statute is the Iowa Civil Rights Act (ICRA). In *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193, 196 (Iowa 1985) (en banc), we examined Iowa Code chapter 601A, now chapter 216, while considering a claim brought by a man who alleged he was fired due to his alcoholism, considered a disability under the ICRA. *Id.* We emphasized the statute said an aggrieved employee "must" initially seek an administrative remedy. *Id.* at 196–97. Because this language was mandatory, we found a common law cause of action of wrongful discharge in violation of public policy could not proceed. *Id.* at 197.

Another case in which we considered the preemption question was *Greenland v. Fairtron Corp.*, 500 N.W.2d 36 (Iowa 1993). There, we reaffirmed that ICRA-related wrongful-discharge claims are preempted by the statute, even after our official adoption of the tort in *Springer*. *Id.* at 37. Specifically, *Greenland* considered the extent of ICRA's preemption of the common law. *Id.* at 38. The plaintiff in that case brought multiple common law claims, including intentional infliction of emotional distress, assault, and battery, alongside a claim of sex discrimination. *Id.* at 37. We held the plaintiff's claim of intentional infliction of emotional distress was preempted, but allowed the assault and battery complaints. *Id.* at 38–39.

A non-ICRA case in which we found the statutory remedy to be exclusive was *Van Baale v. City of Des Moines*, 550 N.W.2d 153 (Iowa 1996), *abrogated on other grounds by Godfrey v. State*, 898 N.W.2d 844, 864, 872 (Iowa 2017). In that case, a police officer was fired after his wife filed a domestic abuse complaint against him, he resisted arrest, and he pled guilty to resisting arrest and nolo contendere to the domestic abuse complaint. *Id.* at 154–55. Although the officer did not characterize his claim as a wrongful-discharge claim, we viewed it as one in substance. *Id.* at 156. The case concerned the civil service provisions in chapter 400 of the Iowa Code. *Id.* at 155. We concluded Van Baale could not bring a wrongful-discharge claim because

> Chapter 400 creates a new right to continued employment (subject only to removal for cause) that did not exist at common law where public employment was at-will. Because chapter 400 creates this new right—not merely a new remedy for a preexisting one—we think chapter 400 proceedings must be considered the exclusive means of challenging the arbitrariness of a civil service employee's discharge.

*Id.* at 156. In so holding, we quoted a rule of statutory construction providing that "[w]here the legislature has provided a comprehensive scheme for dealing with a specified kind of dispute, the statutory remedy provided is generally exclusive." *Id.* (quoting 1A C.J.S. *Actions* § 14 n.55 (1985)).

However, we have not found preemption in other cases. In ruling for Ferguson at the summary judgment stage, the district court relied on *George v. D.W. Zinser Co.*, 762 N.W.2d 865 (Iowa 2009). In that case, we considered whether Iowa's Occupational Safety and Health Act (IOSHA), Iowa Code chapter 88 (2007), provided the exclusive remedy for its violation. *Id.* at 871. Section 88.9(3) granted an aggrieved employee the right to file an administrative action against their employer. *Id.* at 872.

Noting the statute used "may," permissive language, we concluded the remedy set forth in it was not exclusive. *Id.* We contrasted the language in chapter 88 with the "must" language of ICRA. *Id.* During our discussion of a res judicata issue in the case, we also noted, "Not only does the statutory description of the investigation lack the characteristics of an adjudication, but the Division was not acting in a judicial capacity during this specific investigation." *Id.* at 870. As such,

> George did not have a full and fair opportunity to present evidence or respond to D.W. Zinser's position. He had little to no control over the agency's investigation. The Division did not hold a hearing on the issue. It only conducted an informal *nine day* investigation. The parties were not afforded a full and fair opportunity to litigate the matter in dispute.

*Id.*

Another case, *Tullis v. Merrill,* 584 N.W.2d 236 (Iowa 1998), presented a similar issue. There, we again found the common law wrongful-discharge action was available. *Id.* at 239. The Code section at issue was Iowa Code section 91A.10 (1995), which "authorizes the labor commissioner to determine whether wages are unpaid and to commence an action in court on behalf of the complainant for their recovery." *Id.* The statute also stated that the labor commissioner's authorization to bring a claim did not prevent an aggrieved employee's actions for damages if the case was not assigned to the commissioner. *Id.* We looked at the implementing administrative regulations, which stated "an employee would be protected against discharge or discrimination caused by the complaint to the employer." *Id.* at 239–40 (quoting Iowa Admin. Code r. 347—36.6(2)). We concluded the administrative remedy was not exclusive, and the public policy wrongful-termination claim was appropriate. *Id.*

Importantly, both cases involved administrative, rather than court, remedies. Administrative remedies do not provide the level of protection, control, and right to process involved in the court system, justifying the continued existence of the common law claim when the only remedy provided is administrative. *See George*, 762 N.W.2d at 870. Nor are we bound by the rule in *Van Baale* or the ICRA cases, which involved, respectively, a new right to continued employment and a statute using mandatory language. *See Van Baale*, 550 N.W.2d at 156; *Greenland*, 500 N.W.2d at 38–39; *Northrup*, 372 N.W.2d at 197.

**C. The Purpose of the Wrongful Discharge Tort.** Thus, we face an issue of first impression. It was presented but not preserved in *Ackerman v. State*, 913 N.W.2d 610, 621–22 (Iowa 2018). Now, we confront the question left unanswered in that case.

In resolving the question, we are guided by the original purpose of the common law claim for wrongful discharge in violation of public policy. That original purpose was to provide a court remedy to enforce legislatively declared public policy. *See Springer*, 429 N.W.2d at 560–61. A useful question to ask in framing this issue is if we had not adopted the common law doctrine in *Springer* would we choose to adopt it faced with a statute like section Iowa Code 730.5 (2016), which provides for a civil cause of action? We think the answer must be no.

This framing is consistent with the approach other states take. *See, e.g., Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994) ("Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy."); *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010) ("In the context of a wrongful discharge case, preemption occurs when the statutes that establish the 'well-defined public policy' violation

which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy."); *King v. Marriott Int'l, Inc.*, 866 A.2d 895, 904 (Md. Ct. Spec. App. 2005) ("When a statutory cause of action is available to redress the injuries of an employee, wrongful discharge is not an appropriate remedy . . . .").

In keeping with the original purpose of the common law action, when the legislature includes a right to civil enforcement in the very statute that contains the public policy a common law claim would protect, the common law claim for wrongful discharge in violation of public policy becomes unnecessary. In this situation, the "legislature has weighed in on the issue and established the parameters of the governing public policy." *Harvey*, 634 N.W.2d at 686. If the legislature considers the remedies it has provided inadequate, it is free to modify them. However, we need not provide an alternative court remedy when the legislature already provided one. Thus, we hold that when a civil cause of action is provided by the legislature in the same statute that creates the public policy to be enforced, the civil cause of action is the exclusive remedy for violation of that statute.

### IV. Attorney Fees and Costs.

We next turn to Exide's contention that the district court abused its discretion in the amount of attorney fees and costs it awarded to Ferguson. *Smith*, which the district court was guided by, explained how district courts should proceed when attorney fees are authorized for only one portion of a lawsuit. 885 N.W.2d at 625. In that case, Smith sued Iowa State University (ISU) under various causes of action, only one of which allowed recovery of attorney fees. *Id.* at 624. We held Smith could recover only for the portion of the litigation attributable to the cause of action that permitted an award of attorney fees. *Id.* at 625.

We explained that the district court should follow a two-step process in evaluating how to award fees in such hybrid cases.

> First, while fees can be awarded for time devoted generally to the litigation as a whole, the district court should make an appropriate reduction for . . . unrelated time spent on claims for which fees are not recoverable. Then, . . . if the plaintiff only obtained partial or limited success on the claim for which the legislature has authorized fees, the court must consider the reasonableness of the hours expended in light of this ultimate result.

*Id.* The district court need not "make dollar-by-dollar attorney fee reductions for time spent on matters such as an overlong proof brief." *Id.* at 626. Courts may consider such issues, but are "not required to 'sift through all the legal work done.'" *Id.* at 627 (quoting *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 541 (Iowa 1996)). "[T]here is no 'rigid formula' that must be followed." *Id.* (quoting *Vaughan*, 542 N.W.2d at 541). Moreover, "[a] request for attorney's fees should not result in a second major litigation." *Id.* at 626 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983)).

Ferguson requested $75,991.99 in attorney fees and legal expenses. This request did not include approximately ninety hours of work Ferguson determined were solely associated with her common law claim. The district court ultimately awarded $35,000 in fees and $4500 in expenses. In its ruling, the district court discussed the "significant time" Ferguson's attorneys spent "developing aspects of the case that had nothing to do with the statutory claim." The court noted it was "impossible . . . to assess Plaintiff's claimed legal fees in an exacting mathematical fashion" because the submitted report included "block entries for each attorney by date." Ultimately, explicitly following *Smith*, the court awarded $35,000 in fees as "the amount of fees reasonably and necessarily incurred in pursuit of [Ferguson's] statutory claim," adjusted based on her relative success.

Next, the court turned to legal expenses. It did "not believe the expenses claimed by Plaintiff warrant[ed] as much of an adjustment . . . as many of those expenses would have been incurred even if there had only been a trial on the statutory claim." It therefore awarded $4500 in costs, less than the $5648.04 requested.

However, Exide argues the court did not reduce the award enough. In response to Ferguson's motion for attorney fees, Exide went through the time sheets submitted by Ferguson and calculated, specifically, the amount Exide believes Ferguson's attorneys should have received. Exide identified reductions totaling $48,367.20, which would have left Ferguson with a total fee award of $22.273.75. Exide would have reduced Ferguson's expenses by $3789.11, for a total of $1858.93. Exide argues the district court should have specifically ruled on the entries it identified.

At the outset, we note "[t]he district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005). Moreover, if the district court had responded to each of Exide's individual contentions, the result could easily have become "a second major litigation" as Ferguson argued against Exide's conclusions. Instead, the district court followed *Smith,* including its instruction that the court need not "sift through all the legal work," and reduced the fees Ferguson requested by approximately half and the expenses requested by over $1000. The district court was not obligated to do what Exide asks and did not abuse its discretion. We therefore affirm the district court's award of attorney fees and costs to Ferguson.

## V. Conclusion.

We find the civil cause of action provided by Iowa Code section 730.5 is the exclusive remedy for a violation of section 730.5. This means we reverse the district court's order denying Exide's motions for JNOV on the common law claim and its denial of summary judgment in favor of Exide on the common law wrongful-discharge claim. On remand, the district court shall enter judgment in favor of Exide on Ferguson's common law wrongful-discharge claim, vacate those portions of the jury's damages award that would be available only under a common law tort theory, and uphold those portions of the jury's award that would be available under Iowa Code section 730.5(15). *See* Iowa Code § 730.5(15)(*a*)(1) (authorizing "affirmative relief including reinstatement or hiring, with or without back pay, or any other equitable relief as the court deems appropriate including attorney fees and court costs"). We also find the district court did not abuse its discretion in the amount of attorney fees it awarded Ferguson and affirm the attorney fee judgment. Accordingly, we reverse in part the judgment of the district court, affirm in part the judgment of the district court, and remand the case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

This opinion shall be published.